**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

ARAM BARSUMYAN, aka Seal A (1),
          *Defendant-Appellant.*

No. 07-50251

D.C. No.
CR-06-00867-GAF-
1

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
January 10, 2008—Pasadena, California

Filed February 28, 2008

Before: Jerome Farris and Milan D. Smith, Jr.,
Circuit Judges, and H. Russel Holland,* District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable H. Russel Holland, Senior United States District Judge
for the District of Alaska, sitting by designation.

## COUNSEL

Davina T. Chen, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Alexander A. Bustamante and Anne Voights, Assistant United States Attorneys, Major Frauds Section, Los Angeles, California, for the plaintiff-appellee.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Defendant-Appellant Aram Barsumyan appeals the sentence imposed by the district court following his guilty plea to one count of possession of device-making equipment under 18 U.S.C. § 1029(a)(4). Barsumyan contends that his 21-month prison sentence was unreasonable because the operation of U.S.S.G. § 2B1.1(b)(10) effected a 6-level increase in his offense level. Barsumyan also argues that the sentencing court impermissibly imposed two conditions of supervised release: a restriction on "access[ing] or possess[ing] any computer or computer-related devices in any manner," and a requirement that, if he is deported and reenters the country, he

report to the United States Probation Office. We affirm the sentence and reporting condition, but reverse and vacate the computer restriction and remand to the district court for reconsideration of that condition.

## Facts, Procedural History, and Jurisdiction

In October 2005, an informant cooperating with the United States Secret Service charged that Defendant-Appellant Aram Barsumyan was involved in schemes to manufacture counterfeit credit cards. Barsumyan told this informant that he was interested in making contacts to help him engage in various kinds of credit card fraud. The informant agreed to introduce Barsumyan to a hotel employee, who, unbeknown to Barsumyan, was an undercover Secret Service Case Agent. During an arranged meeting, the Agent told Barsumyan that, in the course of her duties at the hotel, she had access to guests' credit cards. Barsumyan gave the Agent a "skimming device,"[1] and asked her to covertly "skim" the hotel guests' credit cards when they registered. The Agent was instructed to then return the device to Barsumyan. He then promised her that for every ten credit card numbers she captured on the device, he would give her two "high quality" counterfeit credit cards.

The following month, the Agent returned the skimming device to Barsumyan, loaded with ten credit card numbers. At a subsequent rendezvous, Barsumyan gave the Agent one counterfeit credit card. When the Agent asked for the promised second card, Barsumyan told her that she was only getting one, because she had only given him six credit card

---

[1] In this context, "skimming device" (or sometimes just "skimmer") refers to a small electronic device that can capture the account information encoded on a credit card's magnetic strip. The information is stored on the device until it is downloaded onto a computer, whose operator can then manufacture counterfeit credit cards with magnetic strips identical to those on the genuine cards. Skimming devices can be attached to ordinary credit card readers, capturing a new card's information every time a card is swiped.

numbers on the skimmer. He also told her that in light of her breach of their understanding, he was altering the deal: thereafter, he would require twenty-five numbers if she wanted an additional card. He then returned the skimming device to the Agent.

Barsumyan was arrested and indicted for one count of producing, using, and trafficking in a counterfeit credit card, 18 U.S.C. § 1029(a)(1), and three counts of possession of device-making equipment, 18 U.S.C. § 1029(a)(4).[2] Pursuant to a plea agreement, Barsumyan pleaded guilty to one count of possession of device-making equipment. The agreement contemplated a base offense level of 6, pursuant to U.S.S.G. § 2B1.1(a)(2), with a 2-level increase pursuant to U.S.S.G. § 2B1.1(b)(10)(A)(i) for possession of device-making equipment. The government also agreed to recommend a sentence at the low end of the applicable range, as long as the total offense level was 8 or lower.

U.S.S.G. § 2B1.1(b)(10), however, not only mandates a 2-level increase in all cases, but also requires that "[i]f the resulting offense level is less than level 12, increase to level 12." Section 2B1.1(b)(10) therefore effectively increased Barsumyan's offense level by six levels. The Presentence Report recommended a 2-level downward adjustment for acceptance of responsibility, yielding a total offense level of 10. Barsumyan's probation officer recommended a sentence of 21 months, at the high end of the range prescribed for an offense level of 10, and recommended the following conditions for supervised release:

---

[2] "Device-making equipment" is defined as "any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device." 18 U.S.C. § 1029(e)(6). "Access device" means, in relevant part, "any card, . . . account number, electronic serial number, . . . or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds." 18 U.S.C. § 1029(e)(1).

3. The defendant shall comply with the immigration rules and regulations of the United States, and, if deported from this country, either voluntarily or involuntarily, not reenter the United States illegally. The defendant is not required to report to the Probation Office while residing outside of the United States; however, within 72 hours of release from any custody or any reentry to the United States during the period of Court-ordered supervision, the defendant shall report for instructions to the United States Probation Office . . . .

. . .

5. The defendant shall not access or possess any computer or computer-related devices in any manner, or for any purpose, unless approved in advance by the Probation Officer.

The justification provided for the latter condition was simply, "Condition No. 5 is recommended due to the nature of the offense."

Over Barsumyan's objection that the 6-level increase was inappropriate due to the nature of Barsumyan's offense, the district court adopted the recommendations of the probation officer, and imposed a 21-month sentence. The district court further adopted, without analysis, recommended conditions of supervised release No. 3 and No. 5. Barsumyan appealed.

We have jurisdiction to hear this case under 28 U.S.C. § 1291.

**Sentence**

Barsumyan first appeals his 21-month sentence.

## 1. Standard of Review

*United States v. Booker* rendered the Sentencing Guidelines "effectively advisory." 543 U.S. 220, 245 (2005). Following *Booker*, this court reviews criminal sentences for "reasonableness," in a "two-step review procedure" outlined in *United States v. Cantrell*, 433 F.3d 1269, 1278-81 (9th Cir. 2006).

First, we must "determine whether the district court properly calculated the applicable range under the advisory guidelines." *United States v. Mohamed*, 459 F.3d 979, 985 (9th Cir. 2006). In doing so, we review the district court's interpretation of the Guidelines de novo, the determination of the facts for clear error, and the application of the Guidelines to the facts for abuse of discretion. *Cantrell*, 433 F.3d at 1279. In the event we find error, we remand to the district court so it can recalculate the guideline range in accordance with our direction. *Id.*

Second, "we will next consider challenges to the reasonableness of the overall sentence in light of all the 18 U.S.C. § 3553(a) factors, including the applicable Guidelines range." *Id.* at 1280.[3] These factors are to be applied parsimoniously—

---

[3]These factors are:

  (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2)  the need for the sentence imposed—

    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)  to afford adequate deterrence to criminal conduct;

    (C)  to protect the public from further crimes of the defendant; and

    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

the sentence must be "sufficient, but not greater than necessary, to comply with the purposes" of punishment. 18 U.S.C. § 3553(a). Our review of the district court's sentence is for "reasonableness," which "merely asks whether the trial court abused its discretion." *Rita v. United States*, 127 S. Ct. 2456, 2465 (2006); *see also Gall v. United States*, 128 S. Ct. 586, 591 (2007) (holding that "courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard").

### 2. Calculation of the Guidelines Range

Both parties concede that the district court's determination of sentencing levels within the Guidelines was correct. Although Barsumyan takes issue with the 6-level increase, he does not do so on the ground that the enhancement does not apply here. Rather, he appears to advocate a sort of hybrid reasonableness test, arguing that "the enhancement—that is, the plain language of the enhancement—is itself unreasonable," and therefore ought not to apply.

Barsumyan contends that the severity of the § 2B1.1(b)(10)

---

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5)   any pertinent policy statement . . . issued by the Sentencing Commission . . . subject to any amendments made to such policy statement by act of Congress . . . .

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

increase targets "more aggravated and sophisticated forms of identity theft" than the simple credit card fraud found in this case. U.S.S.G. app. C, amend. 596 (2000) (describing the rationale for the 12-level minimum). He also claims that the 12-level minimum was aimed at two classes of criminals: those who engage in the cloning of wireless telephones[4] and those who engage in "affirmative" or "breeding" identity theft.[5] To apply § 2B1.1(b)(10) to him, he argues, would create an unreasonably broad and severe enhancement.

**[1]** Barsumyan's suggested approach to sentencing review clashes with this court's approach, as set forth in *Cantrell*. That decision envisions two discrete steps in reviewing sentences: first, review of the calculation to verify that "the district court committed no error in applying the Guidelines," followed by "challenges to the reasonableness of the overall sentence." 433 F.3d at 1280; *see also Booker*, 543 U.S. at 261 (stating that 18 U.S.C. § 3742(e)(3) "told appellate courts to determine whether the sentence 'is unreasonable' "). Barsumyan, by contrast, seems to urge us to perform a sort of mini-*Booker* reasonableness determination at each step in determining the Sentencing Guidelines offense level.

**[2]** Barsumyan's proposition that the district court ought to have reviewed each step for appropriateness under 18 U.S.C. § 3553(a) is in error. The statutory factors are to be applied

---

[4]Both wireless telephones and credit cards are considered "access devices" for these purposes. The cloning of wireless telephones was considered particularly serious because cloned cell phones are commonly used by drug dealers and other criminals to evade surveillance. *See* 144 Cong. Rec. S3021 (1998) (statement of Sen. Leahy); 143 Cong. Rec. S2655 (1997) (statement of Sen. Kyl).

[5]"Affirmative" or "breeding" identity theft involves "affirmative activity to generate or 'breed' another level of identification means without the knowledge of the individual victim whose identification means are misused, purloined, or 'taken over.' " U.S.S.G. app. C, amend. 596 (2000). This next level of identification is, in turn, used to create new bank accounts, loans, etc.

"in determining the particular *sentence* to be imposed." 18 U.S.C. § 3553(a). Post-*Booker*, defendants certainly may attack the effect of the Sentencing Guidelines by arguing that they reflect over-broad or mistaken policy priorities. Interestingly, one of the Supreme Court's most recent opinions respecting the Guidelines blessed just such a policy-based deviation from the Sentencing Guidelines. *See Kimbrough v. United States*, 128 S. Ct. 558 (2007) (allowing variance from Guidelines-prescribed sentencing range due to disagreement with crack cocaine/powder cocaine disparity). That deviation however, must come (as it did in *Kimbrough*) *after* the advisory Guidelines range has been determined, when the district court examines the final advisory sentencing range dictated by the Guidelines in light of all relevant § 3553(a) factors and "the particular circumstances of [the defendant]'s case." *Id.* at 576; *see also id.* at 575 ("The District Court began by properly calculating and considering the advisory Guidelines range. It then addressed the relevant § 3553(a) factors.").[6] If the operation of a particular guideline has inappropriately distorted the final range calculation, that is one factor which the district court may take into account in determining the final sentence.

[3] The touchstone of a policy-based argument against the Sentencing Guidelines, therefore, is not that a particular

---

[6]In *Kimbrough*, for example, the district court first cited numerous mitigating factors pertaining to the case itself, such as the defendant's military service, steady history of employment, and lack of prior convictions, as well as the unremarkable nature of the offense. *Kimbrough*, 128 S. Ct. at 575. Importantly, even as the sentencing court then took into account the irrational effect of the crack/powder disparity, the Supreme Court noted with approval that "the court did not purport to establish a ratio of its own. Rather, it appropriately framed its final determination in line with § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in § 3553(a)(2)." *Id.* Instead of rewriting each characteristic, enhancement, and adjustment, the district court in *Kimbrough* properly calculated the advisory range according to the Guidelines as written, and only deviated from that range after engaging in a holistic § 3553(a) review.

upward or downward adjustment, measured in levels, is unreasonable in isolation, but rather that its operation in the case under consideration results in a sentence, measured in months and years, that is inappropriate in light of § 3553(a). We then review that final, holistic sentencing determination for reasonableness.

### 3. Reasonableness of the Sentence

[4] In addition to other 18 U.S.C. § 3553(a) factors, a district court must consider "any pertinent policy statement issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). Similarly, § 3553(a)(1) requires consideration of "the nature and circumstances of the offense." Both are relevant to Barsumyan's over-criminalization complaint—that he is a petty criminal caught in a net meant to snare far more serious crimes.

[4] The sentencing court, however, cited a number of § 3553(a) factors that militate for a harsher punishment. It stated that "with respect to the nature and circumstances of the offense . . . but for the information from the informant, this could have been a case involving very substantial losses and numerous victims." The record reflects that, by stating that he would provide his ersatz co-conspirator with two fake cards for every ten credit card numbers she provided, Barsumyan initially contemplated at a minimum ten victims, and possibly many more.[7] The court also noted the "calculated" nature of the offense.

[6] Second, when it considered the history and characteristics of the defendant, as well as the need to protect the public, the court noted that Barsumyan was not only "a recidivist,"

---

[7]After allegedly receiving only six numbers, Barsumyan demanded another 25 before he would provide the Agent with another counterfeit credit card. In other words, before his arrest, Barsumyan contemplated at least 31 potential victims.

but one whose prior crimes included one conviction for credit card fraud. It also observed that "His criminal history is escalating, not deescalating, and those all suggest that prison time is appropriate in this case."

**[7]** Therefore, the district court adequately explained the sentence even though it did not specifically comment on Barsumyan's argument regarding the over-broadness of § 2B.1.1(b)(10)(A)(i). Given the defendant's criminal history (including a prior conviction, for which he was then on probation, for a related offense), the calculated and deliberate nature of the crime, and the contemplated number of victims had this crime been successful, we hold that a 21-month sentence was not unreasonable.

## Conditions of Supervised Release

**[8]** Barsumyan objects to two conditions of supervised release: the ban on the use of computers (Condition #5) and the requirement that he report to the Parole Office upon reentry after removal (Condition #3). Under 18 U.S.C. § 3583(d), conditions of supervised release must be "reasonably related" to the purposes of punishment set forth in 18 U.S.C. § 3553(a)(1) and "involve[ ] no greater deprivation of liberty than is reasonably necessary" to deter future criminal conduct, protect the public from further crimes, and promote rehabilitation of the defendant.

Because Barsumyan failed to object to either condition at his sentencing hearing, we review their imposition for plain error under Federal Rule of Criminal Procedure 52(b). Plain error is (1) error, (2) that is plain and (3) affects "substantial rights." *United States v. Olano*, 507 U.S. 725, 732-34 (1993). "Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 732 (quoting

*United States v. Young*, 470 U.S. 1, 15 (1985)) (quotation marks omitted). If our court holds that imposition of a condition of supervised release is plainly erroneous, we remand to the district court for resentencing on an open record. *United States v. Abbouchi*, 502 F.3d 850, 858-59 (9th Cir. 2007).

## 1. Computer Restriction

**[9]** Barsumyan first challenges Condition #5, the prohibition on "access[ing] or possess[ing] any computer or computer-related devices in any manner, or for any purpose." The record does not indicate what the district court might have meant by "computer-related devices," and given the categorical language involved ("in any manner"),[8] one can only speculate as to the outer limits of this proscription—cellular phones? ATMs? Driving a modern car? Checking out groceries using a bar code scanner?

We confronted a similar condition in *United States v. Sales*, 476 F.3d 732 (9th Cir. 2007).[9] In *Sales*, the defendant had been convicted of using his personal computer (including scanner and printer) to make counterfeit $20 bills. *Id.* at 734. The court rejected the condition forbidding access, however, stating that "[t]he breadth of condition #5 is not reasonably related to the nature and circumstances of Sales's counterfeit-

---

[8] It is unclear whether "in any manner" is meant to refer to manners of devices or manners of accessing or possessing them. Either interpretation would make the condition sweeping in the extreme.

[9] Indeed, the prohibition in *Sales* was more specific, namely:

> Computers and computer-related devices include, but are not limited to, personal computers, personal data assistants (PDAs), internet appliances, electronic games, and cellular telephones, as well as their peripherial equipment, that can access, or be modified to access, the internet, electronic bulletin boards, and other computers, or similar media[.]

476 F.3d at 734. The focus of the prohibition in *Sales* reflected a concern more with computer connectivity than with computers per se. No such limitation is present here.

ing offense or Sales's history and characteristics." *Id.* at 736. Rather, the condition "results in a far greater deprivation of Sales's liberty than is reasonably necessary to prevent recidivism, protect the public, or promote any form of rehabilitation." *Id.*

[10] If anything, Condition #5 here is even less appropriate than the condition in *Sales*. In *Sales*, the defendant had actually used a computer in the commission of his crime. By contrast, while a computer is required to download the credit card numbers that a skimming device has skimmed, there is no indication that Barsumyan was going to be the one to do the downloading. Barsumyan was "an intermediary," who told the Secret Service Agent that he knew "two individuals who would be able to produce" cards from the numbers provided on the skimmer.

[11] The government's attempts to distinguish *Sales* are unconvincing. First, it notes that the defendant in *Sales* had no prior criminal convictions, 476 F.3d at 734, while Barsumyan has several, including another one for credit card forgery.[10] But there is no indication that Barsumyan used a computer in any of those crimes either. Even if he had, however, *Sales* is clear that a mere nexus between the crime and a computer does not justify proscribing the use of anything containing a circuit board or microchips.[11]

---

[10]The other convictions are for petty theft, vandalism, and speeding.

[11]When this court has upheld conditions restricting Internet access in cases involving child pornography, it has done so citing the " 'strong link between child pornography and the Internet, and the need to protect the public, particularly children, from sex offenders.' " *United States v. Rearden*, 349 F.3d 608, 621 (9th Cir. 2003) (quoting *United States v. Zinn*, 321 F.3d 1084, 1093 (11th Cir. 2003). We are aware of no published cases approving Internet restrictions imposed on a defendant convicted of a non-sexual offense—let alone a restriction on all computer-related devices, whether Internet-capable or not.

Second, Barsumyan's statement to the Secret Service Agent that he "was interested in making money by committing different types of credit card fraud," does not justify such a sweeping and indefinite condition. Perhaps Barsumyan's statement refers to different ways of obtaining credit card numbers, or different ways to exploit the numbers. We can only speculate, and that speculation does not make the condition any more "reasonably necessary" to prevent further crimes.[12]

**[12]** Having determined that it was error to impose Condition #5, we further hold that the error was plain. *Sales* struck down a more defined condition on facts that would make a ban on computer access more appropriate than in this case. *Cf. Abbouchi*, 502 F.3d at 858 (finding plain error where the "only evidence considered by the district court to support" a domestic violence treatment program condition "was a paragraph in the Presentence Report suggesting 'strains' in Abbouchi's relationship with his wife and that he and his wife had separated"). The record in this case shows no attempt, by either the Probation Officer or sentencing court, to justify this sweeping condition. Had either attempted one, the error would have become apparent.

Condition #5 affected Barsumyan's "substantial rights." *See Olano*, 507 U.S. at 734 (holding that error affects substantial rights when it "affect[s] the outcome of the district court proceeding"); *Abbouchi*, 502 F.3d at 858 (holding that imposition of a sentencing condition affects defendant's substantial rights); *accord United States v. Dozier*, 119 F.3d 239, 244 (3d Cir. 1997)(same). Similarly, *Abbouchi* held that erroneous imposition of a sentencing condition without adequate justification "seriously affect[ed] the fairness . . . of [the] judicial

---

[12]Unless "computer-related devices" encompasses skimmers (it might not have under the definition in *Sales* because the skimmers cannot access the Internet), Condition #5 would not have prevented the crime of which Barsumyan was convicted.

proceedings." 502 F.3d at 858 (quoting *United States v. Jordan*, 256 F.3d 922, 926 (9th Cir. 2001)) (quotation marks omitted).

**[13]** The government contends that Barsumyan's "substantial rights" were not affected because, as an alien, he "is likely to be removed/deported from the United States and never subject to supervision." It is thus highly unlikely that he will ever be subject to the computer condition that he now challenges.[13] In *United States v. Rodriguez-Rodriguez*, this court rejected a similar argument made on ripeness grounds, holding that a defendant may "assert[ ] a facial challenge to a condition imposed upon him at the time of his sentence," notwithstanding that several contingencies might have to occur before he could be punished for its violation. 441 F.3d 767, 771-72 (9th Cir. 2006). The government's argument here is effectively the converse, i.e., that the challenge is moot because several contingencies must not occur for Barsumyan to be affected. This argument is equally unavailing. The probability that the defendant will actually be subject to the condition is irrelevant to the determination of "substantial rights" in the plain error context, which equates "substantial rights" with legal prejudice. *Olano*, 507 U.S. at 734 ("It must have affected the outcome of the district court proceedings."). Since the condition would not have been imposed had the error not occurred, it necessarily affected substantial rights.

In a similar vein, the government contends that Barsumyan's likely removal means we ought to decline to exercise our discretion to consider the plain error under Rule 52(b).[14] Even if removal is "likely," however, it is not certain, and we are

---

[13]We express no opinion as to Barsumyan's actual removability, and assume, *arguendo*, (1) that immigration proceedings will rule Barsumyan to be removable and (2) that it is likely that he will actually be deported.

[14]Federal Rule of Criminal Procedure 52(b) states that "[a] plain error that affects substantial rights *may* be considered even though it was not brought to the court's attention." (Emphasis added).

unwilling to speculate whether such a sweeping and inappropriate condition will actually be enforced. Neither does the prospect of Barsumyan's future removal mean that the error has not already "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings," requiring our correction. *Olano*, 507 U.S. at 732.

**[14]** We therefore vacate Condition #5 and remand for the district court to impose a computer-related restriction permitted by this opinion.

## 2.   *Reporting Requirement*

**[15]** Barsumyan also complains that Condition #3, requiring that he report to the Probation Office upon reentry to the United States, violates his Fifth Amendment right against self-incrimination. He contends that to do so would be, in effect, to report himself for the new crime of being found in the country after deportation. *See United States v. Pina-Jaime*, 332 F.3d 609, 612 (9th Cir. 2003) (holding that an alien need not have reentered the United States illegally to be convicted of being "found in" the country illegally). As Barsumyan himself concedes, however, this court has ruled that an identical reporting condition does not violate the Fifth Amendment. *See Rodriguez-Rodriguez*, 441 F.3d at 772-73. The district court did not err in imposing Condition #3 in this case.

## Conclusion

We conclude that the district court did not abuse its discretion in imposing a 21-month sentence. We further hold that the district court plainly erred in imposing a restriction on all computer use as a condition of supervised release, but did not plainly err in requiring the defendant to report to the Probation Office upon reentry to the United States. The defendant's sentence is AFFIRMED IN PART, VACATED IN PART and REMANDED.