**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

TIMOTHY TRUONG,
*Defendant-Appellant.*

No. 08-10446

D.C. No. 2:06-CR-
00487-FCD-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, District Judge, Presiding

Argued and Submitted
November 3, 2009—San Francisco, California

Filed December 1, 2009

Before: Betty B. Fletcher, William C. Canby, Jr. and
Susan P. Graber, Circuit Judges.

Per Curiam Opinion

15659

## COUNSEL

Lawrence G. Brown, Acting United States Attorney, and Matthew D. Segal (argued), Assistant United States Attorney, Office of the United States Attorney, Sacramento, California, for the plaintiff-appellee.

Joseph J. Wiseman (argued), Law Offices of Joseph J. Wiseman, Davis, California, for the defendant-appellant.

**OPINION**

PER CURIAM:

Defendant Timothy Truong appeals his ten year sentence for possessing fifteen or more unauthorized access devices with intent to defraud. He argues that by treating retail gift cards as access devices, the district court wrongly calculated the advisory sentence under the Guidelines. He also argues that the sentence the district court imposed was unreasonable. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.  Background

The purchaser of a gift card loads money onto the card and electronically activates it for use. An activated card can be used to purchase goods from the retailer who sold the card. Many retail gift cards contain a printed panel that can be scratched off to reveal the card's unique personal identification number, or PIN. The customer can use the PIN to track how much money is left on the card.

Timothy Truong would steal gift cards from retail stores. With special equipment, Truong would capture the information that is stored magnetically on each gift card. He would also scratch off a panel to reveal each card's PIN. After duplicating the card (plastic shaped like a credit card), he would return the duplicates to the shelves from which he had stolen the originals. He kept the originals. A few days later, he would use the PIN to learn whether the duplicate gift card had been sold and, if so, how much money had been loaded onto it. If the duplicate gift card had been sold and thereby activated for use, Truong would use the original gift card to make purchases or would exchange it for cash.

On October 22, 2006, officers, alerted by Wal-Mart's security, approached Truong's Cadillac Escalade in the parking lot of the Yuba City Wal-Mart. Truong sped out of the

parking lot, leading the police on a high-speed chase through several red lights and causing a minor collision between two nearby vehicles. He eventually hit a Ford pickup, whose driver suffered a concussion and a number of bruises. After the crash, Truong tried to run away, but a civilian bystander managed to tackle Truong.

After Truong's arrest, police searched his Escalade, finding more than 3,884 gift cards from nine different retail stores including Wal-Mart, paperwork containing another 4,050 Wal-Mart gift card account numbers, and equipment used to duplicate retail gift cards. He was charged with violating 18 U.S.C. § 1029(a)(3), which prohibits anyone from possessing, knowingly and with intent to defraud, "fifteen or more devices which are counterfeit or unauthorized access devices." Truong pleaded guilty.

The Presentence Report ("PSR") calculated financial loss under U.S.S.G. § 2B1.1 cmt. n.3(F)(i), which determines loss by how many "access device[s]" were involved in the offense. At sentencing, the district court rejected Truong's objections to the PSR, whose recommended findings it adopted. Although the recommended Guidelines range was 70 to 87 months, the district court, largely because of Truong's history of repeated access-device offenses, imposed the statutory maximum of 120 months (ten years) in prison.

## II. Discussion

### A. *Guidelines Calculation*

Although Truong pleaded guilty to possessing fifteen or more unauthorized access devices with intent to defraud, the thrust of his appeal is that the sentence was miscalculated by applying the Guidelines application note for calculating loss caused by access devices. According to Truong, the retail gift cards he possessed do not qualify as "access devices" under the Guidelines. We review the district court's interpretation of

the Guidelines de novo. *United States v. Barsumyan*, 517 F.3d 1154, 1157 (9th Cir. 2008).

**[1]** The Guidelines application note takes its definition of "access device" from 18 U.S.C. § 1029(e)(1), which provides that an "access device" must access an "account." *See United States v. Abozid*, 257 F.3d 191, 195 n.4 (2d Cir. 2001). Truong contends that the retail gift cards in this case did not access an "account" and therefore were not access devices.

**[2]** We have defined "an account [as] a contractual relationship that makes possible the provision of goods, services, or money based on payment, or the expectation of payment, at some later point in time, as described by the entry of credits and debits in a formal record." *United States v. Bailey*, 41 F.3d 413, 417 (9th Cir. 1994). When buying a retail gift card, the customer gives the retailer an amount of money which is then credited to the card and may be drawn against. That purchase creates a contractual relationship. *Cf. United States v. Bruce*, 531 F. Supp. 2d 983, 989 (N.D. Ill. 2008) (concluding that counterfeit Universal Product Code stickers do not access an account). Each purchase made with the card is a debit from the balance initially associated with the card, and both the customer and the retailer can keep track of the balance on the card. Under *Bailey*, a retail gift card accesses an "account."

Nothing in either the plain language of the statute or the case law requires that an "access device" contain information identifying a particular person as its owner. *See Bailey*, 41 F.3d at 418 (finding irrelevant whether access device was traceable to a legitimate customer). What matters is that Truong's stolen retail gift cards were a "means of account access" by which he "obtain[ed] money, goods, [or] services." 18 U.S.C. § 1029(e)(1).

### B.   *Reasonableness of Sentence*

**[3]** Under our "deferential abuse-of-discretion standard of review," we also reject Truong's argument that the district

court's sentence was unreasonable. *Gall v. United States*, 552 U.S. 38, 52 (2007). The district court sufficiently explained that the Guidelines did not account for Truong's particular type of recidivism. It was "astound[ed]" not by the mere fact of Truong's recidivism, but by Truong's repeated commission of the same *kind* of crime — access device fraud — despite repeated punishment. The court also relied on the fact that, while fleeing, Truong "almost killed" the driver of the pickup and, thus, would "do anything to avoid justice." The charges pending against Truong in state courts do not make the sentence unreasonable, since they neither erase Truong's long history of recidivism nor guarantee that Truong will face further punishment. Nor does the amount of proven actual loss in this case require reversal, for the PSR's calculation of actual loss was relatively low only because the probation officer could not identify the many victims of Truong's fraud. The sentencing transcript evidences the district court's thorough consideration of all of the 18 U.S.C. § 3553(a) factors. We find no abuse of discretion in its sentence. *See United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc).

## III.   Conclusion

We affirm Truong's sentence.

**AFFIRMED.**