**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOSEPH ANTHONY LACOSTE,
*Defendant-Appellant.*

No. 15-30001

D.C. No.
6:11-cr-60048-AA-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, Chief District Judge, Presiding

Argued and Submitted March 11, 2016
Portland, Oregon

Filed May 12, 2016

Before: Marsha S. Berzon and Paul J. Watford, Circuit
Judges, and Donald E. Walter,[*] Senior District Judge.

Opinion by Judge Watford

---

[*] The Honorable Donald E. Walter, Senior District Judge for the U.S. District Court for the Western District of Louisiana, sitting by designation.

## SUMMARY**

---

### Criminal Law

The panel vacated conditions of supervised release prohibiting the defendant from using the Internet without prior approval from his probation officer and precluding him from residing in certain counties upon his release from prison, in a case in which the defendant pleaded guilty to conspiracy to commit securities fraud.

Reviewing for plain error, the panel held that the facts of this case do not permit a total ban on Internet access, where the defendant's use of the Internet played only a tangential role in his commission of the underlying fraud offense, the defendant does not have a history of using the Internet to commit other offenses, and nothing in the record suggests that his use of the Internet to post disparaging comments about some of his victims rose to the level of a criminal offense. The panel wrote that the proviso allowing the defendant to use the Internet so long as he first obtains his probation officer's approval does not save what is otherwise a plainly overbroad restriction on his liberty. The panel remanded for the district court to craft a more narrowly-tailored condition if it concludes that such a condition is warranted and valid.

Reviewing for abuse of discretion, the panel held that simply declaring that the defendant is likely to resume a life of crime if he returns to a given area is not enough to support a residency restriction, unless the reasons are obvious from

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the record.  The panel held that the residency restriction is also flawed because the record does not make clear why such a restriction, if one is warranted, should encompass two counties beyond the counties around which the district court's stated concerns revolve.  The panel could not uphold the restriction on the basis of the community's need to heal, where the defendant will not return to the community until 2019 after he serves his prison sentence for conduct that occurred in 2006 and 2007.  The panel instructed that if the district court seeks to reimpose the condition on remand, it should explain more fully its reasons for doing so.

The panel rejected the defendant's challenges to the validity of his conviction and the length of his prison sentence in an unpublished memorandum.

## COUNSEL

Robert Warren Rainwater (argued), Rainwater Law Group, Portland, Oregon, for Defendant-Appellant.

Scott Edward Bradford (argued), Assistant United States Attorney; Kelly A. Zusman, Appellate Chief, United States Attorney's Office; and Billy J. Williams, Acting United States Attorney, Portland, Oregon, for Plaintiff-Appellee.

**OPINION**

WATFORD, Circuit Judge:

Joseph LaCoste pleaded guilty to one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371. The district court sentenced him to 60 months in prison followed by a three-year term of supervised release. In an unpublished memorandum, we reject LaCoste's challenges to the validity of his conviction and the length of his prison sentence. Here we resolve LaCoste's challenges to two of the supervised release conditions the district court imposed: one prohibiting him from using the Internet without prior approval from his probation officer, the other precluding him from residing in certain counties upon his release from prison.

I

Not much is needed by way of background. LaCoste solicited money from individuals to invest in various real estate projects in Oregon. In soliciting the money, LaCoste was not fully candid about his background, and after the projects ran into financial trouble he misled investors about the solvency of the projects. The government charged LaCoste with (among other offenses) conspiracy to commit securities fraud, securities fraud, bankruptcy fraud, and multiple counts of mail and wire fraud. LaCoste agreed to plead guilty to the conspiracy charge in exchange for dismissal of the remaining charges.

At sentencing, the court heard from five individuals—two victims of the fraud and three supporters of LaCoste. The remarks by these individuals suggested that LaCoste's

criminal conduct had caused significant financial and emotional strife among residents of Albany, Oregon, the community in which LaCoste lived. In addition, when discussing LaCoste's post-indictment behavior, one of the victims stated: "When I did not respond to his—his letters, I would get—we would go on the Internet, and on Craig's List on rants and raves, on church—on Sundays, there would be comments about my husband and myself in church. I don't know anybody else that would do that except [LaCoste]."

That comment appeared to form the sole basis for the district court's decision, at the end of the hearing, to impose the first of the challenged supervised release conditions: "[Y]ou shall have no Internet access or posting ability on any Internet device unless [you receive] prior approval from the probation officer." (The written judgment states the condition in these terms: "The defendant is prohibited from using the internet without the prior approval of the U.S. Probation Officer.") The court gave the following explanation for imposing this condition: "If, in fact, there are postings at this point, and when you come out we'll revisit that provision, because what I want [to] do is de-escalate what may be happening in the community and you're not to have any access unless you're given specific permission to have access through probation and through ways in which we can secure who you're communicating with."

The court also imposed a residency restriction as a condition of supervised release: "And, finally, you shall not reside in Linn, Benton, Lane, or Marion Counties, and you shall find—when you return to the community, there will be a placement and we will take a look at where it will be at that time." (The written judgment states that LaCoste "shall not

be in Linn, Benton, Lane or Marion Counties without prior approval of the U.S. Probation Officer." Given the conflict between the two, the oral pronouncement controls. *See United States v. Allen*, 157 F.3d 661, 668 (9th Cir. 1998).) The district court gave two reasons for imposing this condition: (1) to ensure that LaCoste did not resume his criminal behavior; and (2) to give the community in which he lived a chance to heal. The court stressed in particular that it did not want LaCoste to return to Albany:

> So one of the provisions I have in here that I have entertained is I don't want you necessarily going back and living in that community while you're on supervised release. You need to start fresh and get out of that community.

> I don't think it's healthy. I don't think anybody trusts. I think it only exacerbates things. And I think you need to start over and get a job and lead a different life.

> So when I looked at this last night, I circled Linn, Benton, Lane, and Marion County as places that you're not to do your supervised release. You're to find another community because it's too much—there's too much baggage, too much likelihood to get you back being the same old guy with those same old behaviors.

> And on balance, for the community's sake, it gives them a chance to heal, instead of taking sides in the community.

LaCoste challenges both the Internet-use restriction and the residency restriction. Neither of those supervised release conditions had been recommended in the Presentence Report or suggested by the government, so the district court's remarks at sentencing provide the only explanation for why the conditions might be warranted. LaCoste's lawyer objected to the residency restriction but not to the Internet-use restriction.

II

We address the Internet-use restriction first. Because LaCoste failed to object to this condition at sentencing, plain error review applies. *United States v. Barsumyan*, 517 F.3d 1154, 1160 (9th Cir. 2008); *see* Fed. R. Crim. P. 52(b). To prevail, he must show that the district court's error was plain and that it affected his substantial rights. If he makes that showing, we have the discretion to correct the error if it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). We conclude that relief is warranted under this standard.

District judges enjoy broad discretion in fashioning the conditions needed for successful supervision of a defendant, and we owe substantial deference to the choices they make. That is as it should be, since district judges gain far more familiarity with the defendant's criminal conduct and life circumstances than appellate judges do. Congress has nonetheless set limits on the exercise of that discretion, which we are bound to enforce. A district judge may impose any supervised release condition she deems appropriate, subject to three primary constraints. First, the condition must be reasonably related to the nature and circumstances of the

offense, the history and characteristics of the defendant, or the sentencing-related goals of deterrence, protection of the public, or rehabilitation.          18 U.S.C. §§ 3583(d)(1), 3553(a)(1), (a)(2)(B)–(D); *United States v. Rearden*, 349 F.3d 608, 618 (9th Cir. 2003).   Second, the condition must be consistent with the Sentencing Commission's policy statements.  § 3583(d)(3).  And finally, the condition may involve "no greater deprivation of liberty than is reasonably necessary" to serve the goals of supervised release. § 3583(d)(2); *see United States v. Riley*, 576 F.3d 1046, 1048 (9th Cir. 2009).

The district court concluded that the Internet-use restriction was reasonably related to LaCoste's history and characteristics—namely, his apparent use of the Internet to disparage the victims of his offense.  That, at least, is what we infer from the district court's brief explanation for imposing the condition, which referred to LaCoste's "postings," the desire to "de-escalate what may be happening in the community," and the need to "secure who you're communicating with."  A district judge undoubtedly has the authority to stop a defendant from disparaging his victims through communications directed to the victims personally. LaCoste, however, does not appear to have engaged in any one-to-one communications of this sort.  He appears instead to have posted disparaging comments *about* some of his victims on the Internet.  Although the record is a bit hazy on this score, that is what one of the victims seemed to state at the sentencing hearing.  She alleged that LaCoste had posted "rants and raves" about her and her husband through online channels and that those posts had reached an audience at least as broad as members of their church.

We need not decide (because the issue has not been raised) whether First Amendment concerns constrain a district judge's authority to stop a defendant from posting disparaging remarks about his victims on the Internet. Even if the district court could impose a supervised release condition prohibiting such conduct here, the condition it actually imposed sweeps far more broadly. The court prohibited LaCoste from making *any* use of the Internet without first getting his probation officer's approval. In our view, that condition involves a greater deprivation of liberty than is reasonably necessary to address the district court's concerns. Use of the Internet is vital for a wide range of routine activities in today's world—finding and applying for work, obtaining government services, engaging in commerce, communicating with friends and family, and gathering information on just about anything, to take but a few examples. Cutting off all access to the Internet constrains a defendant's freedom in ways that make it difficult to participate fully in society and the economy.

Precisely because access to the Internet has become so vital, courts have upheld conditions prohibiting all use of the Internet only in limited circumstances. Thus far, such conditions have been permitted in one of two scenarios: when use of the Internet was "essential" or "integral" to the offense of conviction, or when the Internet played no role in the offense of conviction but the defendant had a history of using the Internet to commit other offenses. *See United States v. Antelope*, 395 F.3d 1128, 1142 (9th Cir. 2005); *United States v. Perazza-Mercado*, 553 F.3d 65, 71 (1st Cir. 2009). Published decisions in our circuit have upheld conditions barring all Internet use only when the offenses at issue involved child pornography or sexual abuse of minors. *See Barsumyan*, 517 F.3d at 1161 n.11; *United States v. Sales*,

476 F.3d 732, 736 n.2 (9th Cir. 2007). Other circuits have refused to uphold total bans on Internet access even in cases involving the receipt of child pornography. *See, e.g.*, *United States v. Crume*, 422 F.3d 728, 733 (8th Cir. 2005); *United States v. Holm*, 326 F.3d 872, 877–78 (7th Cir. 2003); *United States v. Freeman*, 316 F.3d 386, 391–92 (3d Cir. 2003); *United States v. Sofsky*, 287 F.3d 122, 126–27 (2d Cir. 2002); *United States v. White*, 244 F.3d 1199, 1206–07 (10th Cir. 2001).

The facts of this case do not permit imposition of a total ban on Internet access. LaCoste's use of the Internet played only a tangential role in his commission of the underlying fraud offense. The record suggests that LaCoste used the Internet to communicate by email with investors and his co-conspirators, but using the Internet to that extent was no more integral or essential to the commission of the offense than use of the telephone or the mails was. Nor does LaCoste have a history of using the Internet to commit other offenses. He may have used the Internet to post disparaging comments about some of his victims, but nothing in the record suggests that such conduct rose to the level of a criminal offense. On remand, the district court can attempt to craft a more narrowly tailored condition directed at LaCoste's offensive Internet posts, but a total ban on all use of the Internet is unwarranted.

The government seeks to defend the condition as drafted by arguing that it is not really a total ban, since it allows LaCoste to use the Internet so long as he first obtains his probation officer's approval. That proviso does not save what is otherwise a plainly overbroad restriction on LaCoste's liberty. When a total ban on Internet access cannot be justified, as is the case here, we have held that a proviso for

probation-officer approval does not cure the problem. *See Sales*, 476 F.3d at 737. And for good reason: If a total ban on Internet use is improper but a more narrowly tailored restriction would be justified, the solution is to have the district court itself fashion the terms of that narrower restriction. Imposing a total ban and transferring open-ended discretion to the probation officer to authorize needed exceptions is not a permissible alternative. *See United States v. Scott*, 316 F.3d 733, 736 (7th Cir. 2003).

The two remaining requirements for granting relief under the plain error standard are satisfied as well. Because the Internet-use restriction as currently drafted affected his sentence and may not lawfully be imposed, it necessarily affects LaCoste's substantial rights and the perceived fairness of the judicial proceedings. *See Barsumyan*, 517 F.3d at 1162; *United States v. Burroughs*, 613 F.3d 233, 245–46 (D.C. Cir. 2010). We vacate the Internet-use restriction and remand for the district court to craft a more narrowly tailored condition if it concludes that such a condition is warranted and valid.

### III

We turn next to the supervised release condition barring LaCoste from residing in Linn, Benton, Lane, or Marion Counties. LaCoste objected to this condition at sentencing, so we review the district court's decision to impose it for abuse of discretion. *See United States v. Daniels*, 541 F.3d 915, 921, 924 (9th Cir. 2008). We conclude that this condition, too, must be vacated.

Residency restrictions are unquestionably permissible as a general matter. Congress has authorized district courts to

impose conditions requiring that a defendant "reside in a specified place or area, or refrain from residing in a specified place or area." 18 U.S.C. § 3563(b)(13); *see* § 3583(d). But such restrictions can impose a severe burden on a defendant's liberty interests. Most defendants have a strong interest in returning to the area where they previously lived. A defendant's established community ties—the presence of family, friends, and other support networks—can often play an important role in making the transition from prison to life as a productive member of society.

There are of course situations in which a defendant's ties to his former community may not be a positive influence, and in such cases a condition of supervised release barring the defendant's return may well be justified. Courts have typically upheld so-called "banishment" conditions when the defendant's ties to a particular area contributed to his past criminality, thus increasing the likelihood that he will re-offend if he returns. *See, e.g.*, *United States v. Watson*, 582 F.3d 974, 983–85 (9th Cir. 2009); *United States v. Sicher*, 239 F.3d 289, 291–92 (3d Cir. 2000); *United States v. Cothran*, 855 F.2d 749, 752 (11th Cir. 1988).

The district court relied on similar considerations here, stating that LaCoste would likely go back to "being the same old guy with those same old behaviors" if he were to return to Albany. But the court did not adequately explain the basis for its view. Simply declaring that a defendant is likely to resume a life of crime if he returns to a given area is not enough, unless the reasons are obvious from the record. *See United States v. Collins*, 684 F.3d 873, 890 (9th Cir. 2012). Here they are not. It is not obvious why LaCoste would be more likely to engage in another fraudulent scheme if he returns to Albany as opposed to someplace else. We cannot

tell from the record before us, for example, whether the Albany area offers LaCoste unique opportunities (or temptations) for resuming his criminal behavior. Without a more detailed explanation of the district court's reasons for choosing this condition, we are unable to affirm the imposition of a residency restriction.

The residency restriction as currently framed is flawed for another reason. The district court's stated concerns seemed to revolve solely around LaCoste's return to Albany, which is located in Linn and Benton Counties. However, the residency restriction extends to Lane and Marion Counties as well. The record does not make clear why a residency restriction, if one is indeed warranted, should encompass those two counties. The government argues that the restriction justifiably includes all four counties because the real estate projects LaCoste promised to build were to be located in those counties. That may be true, but it does not explain why forbidding LaCoste to live within the four-county region will further any of the purposes of supervised release. Nor can we uphold the residency restriction on the basis of the court's other reason for imposing it—the community's need to heal. As things stand, LaCoste will not return to the community until 2019, after he serves his five-year prison sentence. That seems like a sufficiently long period on its own to allow the community to heal, particularly since the conduct for which LaCoste was sentenced occurred in 2006 and 2007.

We vacate the residency restriction. If the district court seeks to reimpose it on remand, the court should explain more fully its reasons for doing so.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**