**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gary A. NEWMAN, Defendant–Appellant.**

**Nos. 92–10362, 92–10412 and 92–10566.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1993.

Decided Sept. 28, 1993.

Negatu Molla, Kimble, Gothreau & Nelson, Tucson, AZ, for defendant-appellant.

Robert L. Miskell, Asst. U.S. Atty., Tucson, AZ, for plaintiff-appellee.

Before: POOLE, BOOCHEVER and FERNANDEZ, Circuit Judges.

POOLE, Circuit Judge:

Gary A. Newman appeals his conviction and sentence, following a jury trial, for one count of setting a fire willfully and without authority in a National Forest in violation of 18 U.S.C. § 1855. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291.

We affirm Newman's conviction, but we vacate his sentence and remand for recalculation of the offense level and reconsideration of restitution in light of Newman's ability to pay.

I

On March 26, 1990, Newman was convicted of setting a fire in the Coronado National Forest. This court reversed his conviction on appeal on the ground that the prosecutor's eliciting of testimony regarding Newman's post-arrest silence denied Newman a fair trial. *See United States v. Newman,* 943 F.2d 1155, 1157–58 (9th Cir.1991).

On March 18, 1992, the district court dismissed the indictment without prejudice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(e), because Newman was not brought to trial within 70 days after remand. On April 29, 1992, the grand jury reindicted Newman on the same count that was dismissed on March 18, 1992. On June 9, 1992, the district court denied Newman's motion to dismiss on double jeopardy and speedy trial grounds.

The following evidence was adduced at trial.

On May 29, 1989, two Forest Service special agents, Kenneth Boerman and Dale McCormick, began surveillance of Newman, a twenty-year Forest Service employee. They previously had installed a tracking device on the bottom of Newman's truck. At approximately 9:40 a.m., the agents spotted Newman's truck travelling north on Highway 83 and followed him for approximately two miles. Newman then turned right onto a small road and parked. Boerman continued the surveillance on foot.

At approximately 9:50 a.m., Boerman saw the truck, climbed a tree to get a better view, and watched the truck through his binoculars. The truck was empty, and Boerman did not see anybody in the area.

At 10:40 a.m., McCormick heard a radio transmission from another Forest Service employee to Newman. Newman did not respond. At approximately 10:51 a.m., Boerman saw Newman return to his truck from

the north. Newman got into his truck and headed back to Highway 83.

Boerman then walked toward the spot Newman had parked his truck, spotted smoke around 10:54 a.m., and reported the fire to McCormick. He walked north toward the fire, which was located seventy-five yards from the north fence of Black Oak Cemetery, an eight- to ten-minute walk from where Newman parked his truck. Boerman noticed that some large rocks had rolled out of place "as if someone had just come up or gone down the hill."

McCormick drove to the cemetery and, after he arrived, heard Newman report the fire over the radio at about 11 a.m. The Coronado National Forest Dispatch records showed that Newman reported the fire at 10:59 a.m.

McCormick also testified that an individual wearing vibrum-soled shoes walked north toward the cemetery from the area where Newman's truck was parked. McCormick was unable to follow the tracks to the site of the fire, but a partial vibrum-sole print made before the fire (as evidenced by ash in the print) was discovered near the fire site. The prints were consistent with shoes Newman was wearing. Agents Boerman and McCormick were wearing smooth-soled shoes that day.

May Gates went to the cemetery at about 9:45 a.m. that day to visit her husband's grave. At one point, she heard a man's voice utter approximately three sentences but did not hear a reply. After she saw McCormick's car, she noticed the fire. She saw no one at the cemetery or fire site before McCormick's arrival.

Newman arrived at the cemetery around 11:10 a.m. In response to McCormick's questions, Newman stated that he had seen smoke while driving toward Parker Canyon Lake, which is southeast of the ranger station, and denied starting the fire.

The next day, Newman gave a detailed statement which was inconsistent with the agents' surveillance of him. Newman's trial testimony also was inconsistent with the agents' account. In addition, Newman's description of his alleged activities covered territory of about 20 to 22 miles, whereas his odometer showed only 15.1 miles.

Agent Melvin Douglas of the Forest Service, who has specialized in wild land fire investigations and taught courses for almost twenty years, testified that he was able to eliminate various accidental causes of the fire such as lightning or a carelessly disposed cigarette. He testified that the fire was incendiary, although he could not determine exactly how it started. He stated that the fire began small and took time before it really got going. Two match books from which matches were missing were found in Newman's truck.

The jury convicted Newman on the count charged in the indictment, and the district court sentenced Newman to six months imprisonment and three years supervised release. As conditions of supervised release, Newman must serve six months house arrest and pay restitution of $55,173. Newman timely appeals.

## II

■ Newman first contends that the Double Jeopardy Clause barred his reindictment and retrial following the district court's dismissal of his first indictment without prejudice under the Speedy Trial Act. The district court dismissed the indictment because Newman was not brought to trial within 70 days after this court reversed his conviction. *See* 18 U.S.C. § 3161(e). We review de novo the district court's decision not to dismiss the second indictment on double jeopardy grounds. *See United States v. Bates,* 917 F.2d 388, 392 (9th Cir.1991).

■ Generally, the Double Jeopardy Clause does not bar reprosecution of a defendant, such as Newman, whose conviction is overturned on appeal for any trial error other than insufficiency of the evidence. *Lockhart v. Nelson,* 488 U.S. 33, 39–40, 109 S.Ct. 285, 290–91, 102 L.Ed.2d 265 (1988); *Burks v. United States,* 437 U.S. 1, 15–18, 98 S.Ct. 2141, 2149–51, 57 L.Ed.2d 1 (1978); *United States v. Scott,* 437 U.S. 82, 90–91, 98 S.Ct. 2187, 2193–94, 57 L.Ed.2d 65 (1978); *United States v. Sanchez–Robles,* 927 F.2d 1070, 1075–76 (9th Cir.1991). Moreover, the gov-

ernment is free to reindict when the indictment is dismissed without prejudice pursuant to the Speedy Trial Act. *See* 18 U.S.C. § 3162(a)(2); *United States v. Taylor,* 487 U.S. 326, 342, 108 S.Ct. 2413, 2422, 101 L.Ed.2d 297 (1988). Thus, courts have held that the Double Jeopardy Clause does not bar retrial of defendants on new indictments after their original convictions were reversed on appeal. *See, e.g., Montana v. Hall,* 481 U.S. 400, 403, 107 S.Ct. 1825, 1826–27, 95 L.Ed.2d 354 (1987) (per curiam) (retrial under sexual assault statute following reversal of incest conviction for ex post facto violation); *Taylor v. Kincheloe,* 920 F.2d 599, 602 n. 2 (9th Cir.1990) ("general rule is that if a defendant has his plea to a certain count set aside on appeal, double jeopardy is not implicated by his subsequently being recharged and tried on that same count"); *United States v. Poll,* 538 F.2d 845, 847 (9th Cir.) (retrial for willfully signing false tax return after reversal of conviction for willfully failing to pay employees' withholding taxes on the ground that the district court erred by excluding evidence), *cert. denied,* 429 U.S. 977, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976); *see also Burks,* 437 U.S. at 13, 98 S.Ct. at 2148 ("[a] defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offense [without violating the Double Jeopardy Clause]") (quoting *United States v. Ball,* 163 U.S. 662, 672, 16 S.Ct. 1192, 1195–96, 41 L.Ed. 300 (1896)).

■ Newman argues, however, that the district court should have dismissed the first indictment with, rather than without, prejudice because his counsel tried to withdraw his Speedy Trial Act claim after the district court dismissed the indictment without prejudice. Newman argues that the district court's dismissal of the indictment without prejudice over his objection is like a mistrial which, if granted over counsel's objection, requires a showing of "manifest necessity" to avoid double jeopardy barring reindictment and retrial. *See United States v. Meza–Soria,* 935 F.2d 166, 170–71 (9th Cir.1991) (when mistrial is granted over objections of defendant, government must show manifest necessity else double jeopardy will bar retri-

al); *Bates,* 917 F.2d at 392–98 (same). Newman also asserts that a contrary result would render the Speedy Trial Act meaningless.

■ Newman's "manifest necessity" argument—that his offer to waive the Speedy Trial Act claim rendered the district court's dismissal of the indictment akin to a mistrial requiring a showing of manifest necessity—is meritless. Newman's offer to waive the claim is irrelevant; the Speedy Trial Act prohibits even requested continuances "unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A); *see United States v. Lewis,* 980 F.2d 555, 560–64 (9th Cir.1992). Because the district court did not make those findings when it set the original trial date, dismissal was required under 18 U.S.C. § 3161(h)(8)(A), *see Lewis,* 980 F.2d at 560, and therefore was manifestly necessary.

■ Moreover, we decline to construe Newman's attorney's offer to withdraw his motion as failing to move for dismissal at all. *See* 18 U.S.C. § 3162(a)(2) (Speedy Trial Act rights waived if defendant fails to move for dismissal before trial); *United States v. Brown,* 761 F.2d 1272, 1277 (9th Cir.1985) (same). Offering to withdraw a meritorious Speedy Trial Act motion after the district court decides to grant it is so procedurally irregular that we do not ascribe error to the district court's decision not to permit withdrawal.

Finally, Newman argues that the district court violated the Speedy Trial Act by dismissing the indictment without, rather than with, prejudice. He does not argue that the district court failed to make the findings required by 18 U.S.C. § 3162(a)(2). *See United States v. Delgado–Miranda,* 951 F.2d 1063, 1064 (9th Cir.1991) (per curiam) (setting forth requirements for dismissal without prejudice). Instead, he argues only that dismissal without prejudice renders the Speedy Trial Act meaningless. This argument fails.

Dismissal without prejudice is not a toothless sanction: it forces the Government to

obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds. Given the burdens borne by the prosecution and the effect of delay on the Government's ability to meet those burdens, substantial delay well may make reprosecution, even if permitted, unlikely. *Taylor,* 487 U.S. at 342, 108 S.Ct. at 2422.

In sum, the district court did not err by dismissing the indictment without prejudice and allowing the government to reindict and retry Newman.

### III

■ Newman contends that the evidence was insufficient to convict him of setting a fire willfully and without authority in a National Forest in violation of 18 U.S.C. § 1855. We disagree.

In reviewing the sufficiency of the evidence, this court must determine whether, considering the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of each essential element of the crimes charged. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Toomey,* 764 F.2d 678, 680 (9th Cir.1985), *cert. denied,* 474 U.S. 1069, 106 S.Ct. 828, 88 L.Ed.2d 799 (1986). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Lewis,* 787 F.2d 1318, 1323 (9th Cir.), *amended on denial of reh'g,* 798 F.2d 1250 (9th Cir.1986).

18 U.S.C. § 1855 provides in pertinent part:

Whoever, willfully and without authority, sets on fire any timber, underbrush, or grass or other inflammable material upon the public domain or upon any lands owned or leased by or under the partial, concurrent, or exclusive jurisdiction of the United States ... shall be fined under this title or imprisoned not more than five years, or both.

Here, the evidence is sufficient to establish that there was a fire in the Coronado National Forest, that Newman was without authority to set a fire, and that the fire was incendiary. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. The only issue is whether the evidence is sufficient to establish that Newman willfully set the fire.

The evidence against Newman is circumstantial: no one saw him start the fire. Nevertheless, if the evidence is viewed in the light most favorable to the government, it is sufficient to sustain his conviction.

First, Newman was near the scene of the fire during the time period preceding the fire. He parked his truck at a location that was approximately an eight- to ten-minute walk from the fire. His truck remained there from about 9:50 a.m. to 10:51 a.m., when Newman returned from the north, which was the direction of the fire scene. Shortly thereafter, at 10:54 a.m., Agent Boerman spotted smoke from the fire. Foot prints consistent with Newman's boots led from the vehicle toward the direction of the fire, and a partial consistent print made before the fire was found near the fire site.

Second, two partially used books of matches were found in Newman's truck, which established that Newman had the means of setting the fire.

Third, although May Gates saw no one at the cemetery, she heard a man's voice utter several sentences but did not hear a reply. It can be inferred that this was the radio transmission from another Forest Service employee to Newman at 10:40 a.m. Newman did not respond to the transmission, which is consistent with Gates's testimony.

Fourth, Newman's statement to Agent McCormick and his trial testimony about his location on the morning of the fire were inconsistent with the agents' surveillance of Newman. The jury could infer that Newman lied. These false exculpatory statements provide circumstantial evidence of Newman's consciousness of guilt. *United States v. Perkins,* 937 F.2d 1397, 1401–02 (9th Cir.1991); *United States v. Boekelman,* 594 F.2d 1238, 1240 (9th Cir.1979) (false exculpatory statements may be used only as circumstantial evidence of consciousness of guilt, rather than as evidence of guilt); *see also United States v. Guerrero,* 756 F.2d 1342, 1347 (9th

Cir.) (upholding admission of evidence that defendant was carrying false identification at the time of arrest as "circumstantial evidence of consciousness of guilt and hence of the fact of guilt"), *cert. denied,* 469 U.S. 934, 105 S.Ct. 334, 83 L.Ed.2d 270 (1984).

In sum, the circumstantial evidence against Newman and his inconsistent account of his whereabouts, viewed in the light most favorable to the government, is sufficient evidence to support his conviction. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.

### IV

■ Newman contends that the district court erred by admitting evidence that he was under surveillance, thereby in effect informing the jury that he was under suspicion for prior wrongdoing. We review the district court's admission of the evidence for plain error because Newman withdrew his objection and therefore failed to make a contemporaneous objection. *See United States v. Kessi,* 868 F.2d 1097, 1102 (9th Cir.1989).

Here, the evidence was relevant to demonstrate how the agents were able to observe Newman's actions. *See United States v. Bibo–Rodriguez,* 922 F.2d 1398, 1400–01 (9th Cir.) (setting forth test for evaluating admissibility of prior bad acts evidence), *cert. denied,* —— U.S. ——, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991). Moreover, the danger of unfair prejudice did not substantially outweigh the evidence's relevance. *See id.; see also United States v. De Biasi,* 712 F.2d 785, 793 (2d Cir.) (observing that defendant's contention that the jury must have inferred that he was under investigation for prior wrongdoing from the admission of surveillance photographs was sheer speculation but rejecting claim because defendant had elicited similar testimony and therefore was not prejudiced), *cert. denied,* 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983). The admission of the evidence was not plain error.

1. Although normally the applicable Guidelines are those in effect at sentencing, 18 U.S.C. §§ 3553(a)(4) & (5), the Guidelines in effect at the time of Newman's offense apply here because section 2K1.4 was amended after the date of Newman's offense to his disadvantage. *See Mil-*

### V

Newman challenges his sentence on the grounds that the district court erred by (1) using fire suppression costs to calculate his offense level, (2) imposing a higher sentence after retrial, and (3) ordering restitution without considering Newman's ability to pay.

■ We review de novo the legality of a sentence. *United States v. Jordan,* 964 F.2d 944, 946 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 478, 121 L.Ed.2d 384 (1992); *United States v. Morris,* 827 F.2d 1348, 1352 (9th Cir.1987) (whether harsher sentence is imposed as a result of defendant's assertion of his right to trial is reviewed de novo), *cert. denied,* 484 U.S. 1017, 108 S.Ct. 726, 98 L.Ed.2d 675 (1988). Findings of fact underlying a sentence are reviewed for clear error. *United States v. Nazifpour,* 944 F.2d 472, 474 (9th Cir.1991) (per curiam) (reviewing the district court's factual determination that the defendant could afford to pay a fine). This court reviews a district court's decision to order restitution within the statutory framework for an abuse of discretion. *United States v. Kenney,* 789 F.2d 783, 784 (9th Cir.), *cert. denied,* 479 U.S. 990, 107 S.Ct. 586, 93 L.Ed.2d 588 (1986).

#### A. Calculation of Base Offense Level

■ Newman contends that the district court erred by using fire suppression costs to calculate the total amount of loss caused by the fire and thus to increase his offense level.

■ Under the version of U.S.S.G. § 2K1.4, *Arson; Property Damage by Use of Explosives,* in effect at the time of Newman's offense, his base offense level was 6. *See* U.S.S.G.App. C, amendment 330.[1] Section 2K1.4(c)(2) also specified that U.S.S.G. § 2B1.3, *Property Damage or Destruction,* applied if the offense level was greater. Under section 2B1.3, the base offense level is 4, which is increased based on the amount of

*ler v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (retrospective application of revised guideline violates ex post facto clause); *United States v. Sweeten,* 933 F.2d 765, 772 (9th Cir.1991) (same).

the loss according to the table set forth in U.S.S.G. § 2B1.1.

Here, the probation officer determined that the amount of loss was $55,173: $196 for 98 acres of destroyed vegetation and $54,977 in fire suppression costs. This resulted in a 7–level increase in the offense level for a total offense level of 11. *See* U.S.S.G. § 2B1.1.

The commentary to the Guidelines defines loss as follows:

> "Loss" means the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim.

U.S.S.G. § 2B1.1, comment. (n. 2); *see United States v. Bachiero*, 969 F.2d 733, 734 (9th Cir.1992) (per curiam) (this court must apply the commentary to Guidelines sections unless it is inconsistent with the text of the Guidelines).

Newman argues that the measure of loss under the commentary is only the $196 damage to the destroyed vegetation. This argument is persuasive. The commentary to the Guidelines defines loss only in terms of the value of the property. *See* U.S.S.G. § 2B1.1, comment. (n. 2). It does not include consequential losses. If the Sentencing Commission had intended to include consequential losses, it could have included them in the definition of loss.

Moreover, if we were to include consequential losses, each crime such as arson or theft would have its own peculiar valuation problems, regardless of the value of the property itself. Under this system, determining a defendant's offense level would be too complex and would not necessarily reflect the defendant's culpability accurately.

■ The government argues that if the loss is only the $196 damage to vegetation, the resulting offense level does not accurately reflect Newman's culpability. Given the definition in the Guidelines regarding measurement of loss, however, we do not agree that suppression costs can be included in the loss valuation. The costs may, however, provide a basis for upward departure. *See* U.S.S.G. § 2B1.3, comment. (n. 4) (providing for an upward departure in cases where the monetary value of property loss does not adequately reflect the extent of the harm caused). Accordingly, we vacate Newman's sentence and remand for resentencing to give the district court an opportunity to consider whether an upward departure is appropriate. We express no opinion on this issue.

**B.  Imposition of Higher Sentence After Retrial**

■ Newman argues that the district court erred by imposing a harsher sentence after retrial than he received after his first trial.

After his first trial, Newman was sentenced to four months imprisonment, four months house arrest, restitution of $55,173, and three years supervised release. After his second trial, Newman was sentenced to six months imprisonment and three years supervised release, with conditions of supervised release of six months house arrest and restitution of $55,173 (CR 43).

In *North Carolina v. Pearce*, the Court held that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear ... so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969); *see Texas v. McCullough*, 475 U.S. 134, 138, 106 S.Ct. 976, 978, 89 L.Ed.2d 104 (1986) ("[b]eyond doubt, vindictiveness of a sentencing judge is the evil the [*Pearce*] Court sought to prevent rather than simply enlarged sentences after a new trial"). When different courts impose different sentences, however, there is no presumption of vindictiveness, although "the defendant may still obtain relief if he can show actual vindictiveness upon resentencing." *McCullough*, 475 U.S. at 138, 106 S.Ct. at 979. Thus, when a second sentencing judge provides an "on-the record, wholly logical, nonvindictive reason for the sentence," the requirements of *Pearce* are met, "particularly since trial judges must be accorded broad discretion in sentencing." *Id.* 475 U.S. at 140, 106 S.Ct. at 980.

Here, a different judge imposed a wholly logical sentence. Moreover, at the first trial, the sentencing judge was different from the trial judge, while at the retrial, the same judge presided over the trial and the sentencing proceedings. Finally, the court stated its reasons for imposing the sentence, including Newman's breach of trust, on the record. Accordingly, Newman's assertion of vindictiveness fails.

## C. Restitution

Newman argues that the district court erred by ordering restitution without considering his ability to pay.

As a preliminary point, Newman does not argue that the district court erred by including consequential losses in determining the amount of restitution. Accordingly, we do not address this issue.

■ 18 U.S.C. § 3664(a) requires the sentencing court to consider the defendant's financial resources and earning ability in determining the amount of restitution to be paid. *United States v. Ramilo*, 986 F.2d 333, 335 (9th Cir.1993). Section 3664(a) does not require the court to make express findings of fact regarding financial resources and earning ability: it merely provides that the court "shall consider" a variety of factors, including the defendant's financial resources, financial needs, and earning capacity. *United States v. Cannizzaro*, 871 F.2d 809, 810 (9th Cir.), *cert. denied*, 493 U.S. 895, 110 S.Ct. 245, 107 L.Ed.2d 195 (1989). The court has broad discretion to determine the type and amount of evidence it deems relevant, *id.* at 811, but the court is not free to disregard the statutory requirements. *Ramilo*, 986 F.2d at 335. Thus, if a district court fails to consider a defendant's ability to pay, it abuses the discretion afforded it by the act. *Id.*

■ A sentencing court is not prohibited from imposing restitution even on a defendant who is indigent at the time of sentencing so long as the record indicates that the court considered the defendant's future ability to pay. *Id.* at 336. In addition, "at the time restitution is ordered the record must reflect some evidence the defendant may be able to pay restitution in the amount ordered in the future." *Id.*

Here, the presentence report ("PSR") states that Newman "does not appear to have the ability to pay a fine or other court imposed assessment immediately, however, he may be able to make regular monthly installments towards this obligations [sic], depending on his employment status during a period of supervision." At the time the PSR was prepared, Newman's net worth was − $700. At the time he was terminated from the Forest Service, he earned approximately $17,000 a year. After his termination, he worked odd jobs or on his family's cattle ranch. During one period, he earned approximately $150 per week while working full time as a tow truck operator, although he since has been working for the company only on a part time or "stand by" basis.

The record "does not suggest there is any possibility" that Newman could pay restitution in the amount of $55,173 within three years from his release from prison. *See Ramilo*, 986 F.2d at 337. Moreover, the record does not indicate that the district court considered Newman's future ability to pay. *See id.* at 336. Instead, the district court apparently focused only on the amount of loss to the victim, noting that "restitution is a difficult subject. The only number the Court has to work with is the $55,000." Because the district court must consider Newman's ability to pay before imposing restitution, we vacate the restitution order and remand for reconsideration in light of Newman's future ability to pay. *See id.* at 336–37.

Newman also apparently challenges the accuracy of the calculation of the fire suppression costs by arguing that the district court erred by failing to hold a separate hearing to determine the amount of the fire suppression costs. Newman never asked for a hearing, however, or filed objections to the PSR. The district court did not err by failing to hold a separate hearing.

■ Finally, Newman argues that the government is not eligible to receive restitution because it is not a "victim" under the Victim Witness Protection Act. This argument fails. *See United States v. Smith*, 944 F.2d 618, 621 (9th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992).

AFFIRMED in part; VACATED and REMANDED in part.