**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

JONAH MICAH WARR,
    *Defendant-Appellant.*

No. 07-30125

D.C. No.
CR-06-00053-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued on January 7, 2008
Submitted on June 12, 2008[1]
Seattle, Washington

Filed July 2, 2008

Before: Andrew J. Kleinfeld, A. Wallace Tashima, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

---

[1]We deferred submission in this case to await the Supreme Court's decision in *Irizarry v. United States*, 2008 WL 2369164 (U.S. Jun. 12, 2008).

## COUNSEL

Kathleen L. DeSoto (argued), Garlington Lohn & Robinson, PLLP, Missoula, Montana, for appellant Jonah Micah Warr.

Leif M. Johnson (argued), Assistant United States Attorney, Timothy J. Racicot, Assistant United States Attorney, Missoula, Montana, for appellee United States of America.

## OPINION

TALLMAN, Circuit Judge:

Jonah Micah Warr ("Warr") appeals his 120-month sentence after pleading guilty to nine counts of wildland arson in violation of 18 U.S.C. § 1855.[2] He makes three arguments on

---

[2] 18 U.S.C. § 1855 provides, in relevant part: "Whoever, willfully and without authority, sets on fire any timber, underbrush, or grass or other

appeal. First, he contends that the district court erred in calculating the advisory sentencing guidelines range by including fire suppression costs in the loss calculation, resulting in an elevated total offense level. Second, he asserts that the district court imposed an unreasonably long sentence. Third, he argues that the district court erred by relying at the sentencing hearing on a statistical study about recidivism by young offenders without providing advance notice to Warr. We reject Warr's arguments and affirm his sentence.

I

Between July 24, 2006, and September 1, 2006, Warr, who was then nineteen years old, started nine wildland fires on National Forest Service land.[3] When he was apprehended, he confessed, and explained how, when, and where he started each fire.

At the change of plea hearing, the district court asked Warr, who "was trained as a firefighter in South Dakota," why he started the various fires. With respect to one fire, Warr explained that he had started it because he was "mad" that firemen extinguished a previous fire he had started, and he "wanted the fires to be going, I didn't want them put out." He admitted that he experienced "a little bit" of a "thrill" by starting fires. With respect to another fire, Warr stated that he had started it because "there was a storm coming through and it was really windy so I figured it would be a good time to start a fire."

Following the change of plea hearing, the district court

inflammable material upon the public domain or upon any lands owned . . . by . . . the United States . . . shall be fined under this title or imprisoned not more than five years, or both."

[3]Warr also ignited at least eleven other fires on Montana state forest land. They were not included in the indictment because they did not occur on federal land.

filed an order notifying the parties that it was contemplating imposing a sentence "above the advisory guidelines based upon *United States v. Booker*, 543 U.S. 220 (2005) and the 18 U.S.C. § 3553(a) factors."

The Presentence Report calculated Warr's total offense level and criminal history. The report computed the total offense level to be 25. That number included a 20-level increase under United States Sentencing Guideline ("USSG") § 2B1.1(b)(1)(K) based on an estimated loss of between $7 million and $8 million. The Presentence Report stated,

> This amount is the actual loss defined at Application Note 3(A)(I) as reasonably foreseeable pecuniary harm that resulted from the offense. Application Note 3(A)(I) further defines reasonably foreseeable pecuniary harm as the pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense. In this case, [Warr] was a trained firefighter and a Montana resident who, given his statements, knew the risks of starting fires while forest restrictions were in place. He also knew or should have known costs associated with fires.

Of the estimated damage, nearly $6.7 million was attributed to fire suppression costs. Of that $6.7 million, about $6.5 million was expended in suppressing Warr's first and largest fire.

Warr's criminal history, as described in the Presentence Report, is extensive. He has eight criminal history points, yielding a criminal history category of IV. As a juvenile, he was cited for misdemeanor assault, shoplifting, and minor in possession of alcohol. His adult convictions include possession of explosives (three counts), criminal mischief (four counts), possession of dangerous drugs, third degree burglary, possession of burglary tools, possession of less than two ounces of marijuana, and shoplifting. On one occasion, he

made and exploded various types of bombs, including pipe bombs, destroying a truck and several mailboxes.

In advance of the sentencing hearing, Warr submitted an evaluation prepared by a psychologist, Dr. Michael Scolatti. In it, Dr. Scolatti diagnosed Warr with pyromania and "a psychotic disorder not otherwise specified," both of which are complicated by alcohol and marijuana use. Dr. Scolatti observed, "Without psychiatric and psychological treatment, Mr. Warr is a significant danger to society. He has significant mental health disorders and without proper treatment will become worse."

The sentencing hearing occurred on March 27, 2007. First, the district court discussed the appropriate sentencing guidelines range. The court accepted Warr's argument that Forest Service salaries should not be included in the loss calculation, and thus reduced Warr's total offense level from 25 to 23.

Next, the district court rejected Warr's argument that fire suppression costs should not be included in the loss calculation because those costs were not reasonably foreseeable. The district court reasoned:

> [I]f there was one fire that [Warr] set, I might think [Warr's argument] had weight. If there was two, possibly. But when there's 20? And [Warr] said he was hoping to set one that got out of control. Surely it's reasonable to believe that by virtue of his conduct, he was trying to create a problem. And he wants something to get out of control, it would seem to me that it is reasonably foreseeable that if you set a fire in extreme circumstances and continue to set fires when you see the fire engines and the fire crews going out, with a hope expressed that it would be one that would get away, that what he was really hoping for was something that was quite expensive

and costly in terms of whatever gratification he was getting out of it.

I don't think it's unreasonable to say that if you set 20 fires in the state and national forests and it costs however many millions of dollars to clean them up that that should be a foreseeable consequence, the actual loss.

The district court concluded that the sentencing guidelines range for an offender with a total offense level of 23 and a criminal history category of IV is 70 to 87 months.

At the sentencing hearing, and after calculating the appropriate sentencing guidelines range, the district court heard testimony from Dr. Scolatti. Dr. Scolatti reaffirmed his diagnosis of pyromania, "a psychotic disorder not otherwise named," and marijuana and alcohol abuse. He testified that Warr's disorders are treatable and that Warr "definitely" has the "desire to change." In Dr. Scolatti's view, "the best place for [Warr] would be a federal medical facility." Dr. Scolatti opined that Warr could complete his treatment within three years, but would require "follow-up" therapy afterwards. On cross-examination, Dr. Scolatti stated that, in Warr's current condition, he poses a "significant danger" to the community, and would continue to do so if he was unable to successfully complete treatment.

After hearing testimony from Warr's mother and Warr himself and hearing arguments from defense counsel and the government, the district court discussed the relevant factors enumerated in 18 U.S.C. § 3553(a).[4] After reading those fac-

---

[4] 18 U.S.C. § 3553(a) requires consideration of the following factors when determining the appropriate sentence:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

tors aloud, the district court began by expressing its "grave concerns about the dangerousness of Jonah Warr and [its] concern[ ] about the factors of public safety and the notion of his likely recidivism coupled with the dangerous characteristics that he possesses."

In considering Warr's recidivism, the district court appears to have relied on a study done by the federal Bureau of Prisons measuring how age and criminal history category affect an offender's likelihood of recidivism. As the district court described that study, "people with [Warr's] criminal history category, who commit the offenses like those others that he was involved in, have basically a two-out-of-three chance of recidivating." The district court also noted that, according to the study, recidivism rates drop markedly when a person reaches the age of "35 or 40," a fact that, in the district court's view, militated in favor of a longer term of incarceration. This

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines —

. . . .

study is not part of the record, nor did the district court notify Warr of its intention to rely on the study.

The district court conducted an in-depth examination of "the characteristics of the offender." It noted that when Warr was released from his most recent stint in prison and returned home, he could have sought help for his psychological problems, but chose not to do so. "Instead, he engaged in this insidious pyromania, setting fires at great risk to everybody who lived in the area." The court was troubled by the fact that although Warr claimed not to have intended to harm anyone, Warr spoke of the "thrill" and "adrenaline rushes" he felt when he started fires.

The district court also discussed Dr. Scolatti's diagnoses, and noted that Warr was a borderline psychopath, and that Dr. Scolatti had "not ruled out anti-social personality disorder. . . . He's dangerous. He's dangerous to himself and the community." Based on this discussion, the district court stated that Warr's "history and characteristics . . . would justify a sentence of 180 months."

Also considered by the district court was Warr's manner when testifying. According to the court, Warr appeared to have a "flat affect," which underscored his "lack of emotional processing."

Next, the district court turned to "the need for the sentence imposed to reflect the seriousness of the offense and to promote a respect for the law and to provide just punishment." In analyzing this factor, the district court noted that Warr had caused almost $7 million in damage, destroyed part of a forest, jeopardized many people's lives, impacted the functioning of a federal agency, and drained federal resources. Based on this "very, very serious offense," the district court did not believe a within-guidelines sentence would be sufficient.

The district court also discussed the role of deterrence — both general and specific — in fashioning an appropriate sen-

tence. On the issue of general deterrence, although the district court questioned whether a harsher sentence would deter others from criminal conduct, it concluded that "I'm not certain if there isn't some general deterrence if Jonah Micah Warr gets a significant sentence. And I believe that would justify a sentence, perhaps, in the range of 180 months."

The district court classified as "very important" the need for specific deterrence, that is, "the need to protect the public from further crimes by Jonah Micah Warr." "This young man has been involved in incredibly dangerous activities and the offenses of conviction were catastrophic to the community. And as I said, we're all fortunate that he isn't here on some sort of homicide charges because of the fires he set." In the district court's view, the sentence suggested by the guidelines would not provide the public with adequate protection.

The district court also reasoned that a longer sentence would provide Warr "with the needed educational, vocational, medical care and other correctional treatment."

The district court pondered whether to impose a 180-month sentence, but decided against it because a lower sentence would sufficiently accomplish the goals of protecting the public and helping Warr deal with his psychological problems. The district court admitted, "I simply have not dealt with a case of this nature. I've not dealt with a person who's had Jonah Micah Warr's psychological background, who is a borderline psychopath pyromaniac who has been involved in the extent of violence he's been involved in, who is impulsive, who has no risk aversion or who has set 20 fires in state and national forests." The district court then imposed a sentence of 120 months.[5] Warr filed a timely appeal.

---

[5]The statutory maximum punishment was forty-five years (five years for each of nine arson counts).

## II

Our review of Warr's sentence is a two-step inquiry. First, we consider "whether the district court properly calculated the applicable range under the advisory guidelines." *United States v. Barsumyan*, 517 F.3d 1154, 1157 (9th Cir. 2008) (citing *United States v. Mohamed*, 459 F.3d 979, 985 (9th Cir. 2006)); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Second, we consider "challenges to the reasonableness of the overall sentence in light of all the 18 U.S.C. § 3553(a) factors, including the applicable Guidelines range." *Barsumyan*, 517 F.3d at 1157 (citing *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006)); *Carty*, 520 F.3d at 991.

## A

### 1

We review *de novo* the district court's calculation of the advisory sentencing guidelines range. *Cantrell*, 433 F.3d at 1279. The district court's factual findings are reviewed for clear error, and its application of the guidelines to the facts is reviewed for abuse of discretion. *Mohamed*, 459 F.3d at 985; *Cantrell*, 433 F.3d at 1279.

### 2

Warr argues that the district court erred in determining the advisory sentencing guidelines range. In particular, he argues that the district court, when considering the "loss" caused by Warr's crimes, should not have included fire suppression costs. According to Warr, those costs were not a reasonably foreseeable pecuniary harm as a result of his actions.[6]

---

[6]If the district court had excluded fire suppression costs, the total loss would have been less than $2.5 million, and Warr's total offense level would have been reduced by four levels and yielded an advisory sentencing guidelines range of 46 to 57 months.

**[1]** In 2001, the Sentencing Commission amended the definition of "loss" under § 2B1.1 to "the reasonably foreseeable pecuniary harm that resulted from the offense." USSG § 2B1.1, Application Note 3(A)(I) (Nov. 2006). "Reasonably foreseeable pecuniary harm" is "pecuniary harm that the defendant knew, or under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* No circuit has yet addressed whether, in light of the 2001 amendment to § 2B1.1, fire suppression costs may be included in the loss calculation.[7]

**[2]** The district court did not err in concluding that the cost of fire suppression was a reasonably foreseeable pecuniary harm of Warr's actions. Warr started forest fires in the summer, sometimes in high winds, with the intention of causing widespread destruction. He told investigators that he wanted to "do something big," and that he derived a "thrill" from watching his fires spread. Warr told them that it made him angry when firemen put out one fire, so he started more fires, hoping that "one of them would get big." From this evidence, the district court properly concluded that Warr knew or should have known that a "potential result" of his actions was the expenditure of funds to put the fires out.

Warr argues that even assuming some suppression costs were foreseeable, he neither foresaw nor reasonably could have foreseen the magnitude of the fire suppression effort. Put another way, although he may have intended to light a large fire, it was not foreseeable that the fire would have necessitated a multi-million dollar response.

---

[7]Before the 2001 amendment, "loss" was defined as "the value of the property taken, damaged, or destroyed." USSG § 2B1.1, cmt. (n. 2) (2000); *see United States v. Newman*, 6 F.3d 623, 630 (9th Cir. 1993). In *Newman*, we held that "loss" did not encompass "consequential losses. If the Sentencing Commission had intended to include consequential losses, it could have included them in the definition of loss." *Id.* In light of the 2001 amendment, that aspect of *Newman* is no longer good law.

We find this argument unavailing. There is nothing in the record to challenge the district court's common sense conclusion that the damage Warr caused was an entirely foreseeable consequence of his actions. At the sentencing hearing, Warr was permitted to call witnesses and to testify on his own behalf. If any link in the chain of events that occurred after Warr lit his fires was not a reasonably foreseeable consequence of the event that came before it, Warr was at liberty to elicit testimony on this subject, but did not do so. As such, the district court was presented with what to us appears to be an unambiguous record: Warr intended to light a large fire that would burn out of control; he took reasonable steps to achieve that goal by lighting numerous fires in forests, during the summer, in high winds, and in dried grass. That his success in causing such a massive conflagration may have been unlikely does not necessarily make it unforeseeable.

[3] Warr also contends that the district court placed undue emphasis on the fact that Warr was a "trained firefighter" in South Dakota and was therefore more likely to know the consequences of his actions. We disagree. It does not appear that the district court placed any emphasis, much less undue emphasis, on this experience. The Presentence Report mentions Warr's brief training as a firefighter, but the district court did not mention it during its discussion on foreseeability. To the extent that the district court did place some emphasis on this experience, it was not improper to do so. It is reasonable to infer that a person with knowledge of how fires burn, how they spread, and how they are extinguished is more likely to succeed in lighting a large fire, if, like Warr, it was his intention to do so.

## B

### 1

The district court did not err in making its advisory guidelines calculations. "Our review of the district court's sentence

is for 'reasonableness,' which 'merely asks whether the trial court abused its discretion.' " *Barsumyan*, 517 F.3d at 1158 (quoting *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)); *see Gall v. United States*, 128 S. Ct. 586, 591 (2007) (holding that "courts of appeals must review all sentences — whether inside, just outside, or significantly outside the Guidelines range — under a deferential abuse-of-discretion standard"); *Carty*, 520 F.3d at 993. As we have noted, "[t]his review requires deference to the district court's decision, and should not resemble a *de novo* review." *United States v. Cherer*, 513 F.3d 1150, 1159-60 (9th Cir. 2008) (citing *Gall*, 128 S. Ct. at 600).

2

Warr argues that the sentence he received was unreasonable because the district court did not properly weigh the § 3553(a) factors and thus arrived at an unreasonable sentence. In particular, Warr argues that "the District Court unreasonably found that Warr's history and characteristics, combined with the need to protect society, warranted a sentence in excess of the Guidelines." We disagree.

**[4]** Where, as here, a district court "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S. Ct. at 597. "This does not mean that the district court's discretion is constrained by distance alone. Rather, the extent of the difference is simply *a* relevant consideration." *Carty*, 520 F.3d at 991. "[A] major departure should be supported by a more significant justification than a minor one." *Id.* (quoting *Gall*, 128 S. Ct. at 597). "Once the sentence is selected, the district court must explain it sufficiently to permit meaningful appellate review." *Id.*

**[5]** Here, the district court's discussion of the § 3553(a) factors was a model of thoroughness and careful deliberation.

The district court discussed each factor extensively, stated the relative importance it accorded to each factor, grappled with a variety of possible sentences, and arrived at a sentence that it felt best served the objectives set forth in 18 U.S.C. § 3553.

**[6]** First, the district court expressed deep concern about Warr's background, which, the district court concluded, militated strongly in favor of an above-guidelines sentence. In particular, the district court noted that Warr is a pyromaniac, a borderline psychotic, and may suffer from an anti-social personality disorder. These conditions are exacerbated by his abuse of marijuana and alcohol. He has minimal risk aversion, suffers from impulse control problems, and derives pleasure from starting fires and committing other crimes. Although Warr professed interest in getting help for his psychological problems, he did not do so when he had the opportunity. Instead, after his release from prison, he went on a rampage and started multiple fires which led to the instant convictions. Moreover, at the time of sentencing, Warr was only twenty years old, an age that, the district court noted, suggested Warr might reoffend if given the opportunity after a shorter prison term.

**[7]** The district court also discussed the circumstances of Warr's crimes which, in the district court's view, were strongly suggestive of an above-guidelines sentence. It is beyond dispute that Warr acted with the intention to cause widespread destruction, and he succeeded. His conduct occurred during fire season when conditions were optimal to set fires which could easily rage out of control. He started fires during the summer, in high wind, in dried grass. He caused $7 million in damage, destroyed part of the national forest lands, and placed many peoples' lives in danger.

**[8]** Warr's personal characteristics, together with the seriousness of his crimes strongly suggested to the district court that Warr posed a significant danger to society and would continue to do so for years to come. In the district court's

view, a sentence within the guidelines range would not provide sufficient protection to the public, nor would it allow Warr enough opportunity for educational training, medical care and other correctional treatment. A lesser sentence would also not provide sufficient deterrence to others contemplating similar crimes.

In addition to considering and rejecting a sentence within the guidelines, as well as Dr. Scolatti's recommendation to sentence Warr to three years in a federal medical facility, the district court also considered and rejected stiffer sentences. *See Carty*, 520 F.3d at 991 ("The overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary' to reflect [the principles stated in 18 U.S.C. § 3553(a) and (a)(2)]."). The district court noted that based on the seriousness of Warr's crimes and his psychological makeup, a 180-month sentence would likely be justified. Ultimately, however, the district court felt that the objectives of the sentencing statute could be satisfied with a lesser, 120-month sentence.

The district court's final comments before imposing sentence illustrate the extent to which it struggled to find a fair and just sentence: "I simply have not dealt with a case of this nature. I've not dealt with a person who's had Jonah Micah Warr's psychological background, who is a borderline psychopath pyromaniac who has been involved in the extent of violence he's been involved in, who is impulsive, who has no risk aversion or who has set 20 fires in state and national forests."

**[9]** The district court's discussion of the § 3553(a) factors was exemplary, and we cannot say that the sentence it ultimately imposed was unreasonable. *See Gall*, 128 S. Ct. at 594; *Mohamed*, 459 F.3d at 989 (holding that a sixty-month sentence following a conviction for making bomb threats was reasonable, despite a guidelines range of twelve to eighteen months, where the district court thoroughly discussed the

§ 3553(a) factors and the sentence was only half the statutory maximum).

**[10]** Warr also argues that he received an unreasonable sentence because the district court improperly characterized Dr. Scolatti's testimony when reaching the conclusion that Warr would continue to pose a danger to society. Not so. The district court did not mischaracterize Dr. Scolatti's testimony, but disagreed with some parts of it and agreed with others. That was within its province as the fact-finder at sentencing. The district court agreed with Dr. Scolatti's diagnosis of Warr and his assessment that Warr posed a danger to society, and would continue to do so if he did not successfully complete treatment. The district court disagreed that the best course of action would be to impose a three-year sentence in a federal medical facility. The district court's explanation for imposing a longer sentence was well-reasoned and justified.

### III

Next, Warr takes issue with the district court's apparent reliance on the Bureau of Prisons' study. According to Warr, this reliance was problematic because the study was not part of the record, it did not take into account mental illness, and it was not provided to the parties in advance of the sentencing hearing.

The legal basis of Warr's argument is unclear from his brief. The argument appears in a section of his brief challenging the reasonableness of his sentence, but our cases have analyzed similar arguments under either the Fifth Amendment's Due Process Clause or Federal Rule of Criminal Procedure 32. *See United States v. Baldrich*, 471 F.3d 1110, 1113 (9th Cir. 2006) (analyzing under the Fifth Amendment's Due Process Clause and Rule 32 the district court's failure to disclose to the defendant prior to sentencing the probation officer's confidential sentencing recommendation). Regardless of the legal basis, Warr's argument is without merit.

Because Warr did not object to the use of the study at the sentencing hearing, we review the district court's reliance on the study for plain error. *See United States v. Nappi*, 243 F.3d 758, 760 (3d Cir. 2001). "A plain error is a highly prejudicial error affecting substantial rights." *United States v. Maldonado*, 215 F.3d 1046, 1051 (9th Cir. 2000) (citations omitted). "We should correct a plain error only if it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Ortiz-Lopez*, 24 F.3d 53, 55 (9th Cir. 1994) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

**[11]** Federal Rule of Criminal Procedure 32(i)(1)(C) requires that, at sentencing, the district court provide defense counsel the opportunity "to comment on the probation officer's determination [in the Presentence Report] *and other matters related to an appropriate sentence*." (emphasis added.) We have interpreted Rule 32 "to require the disclosure of all relevant factual information to the defendant for adversarial testing." *Baldrich*, 471 F.3d at 1114.

In the Supreme Court's most recent pronouncement in this area, the Court said:

> Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues. We recognize that there will be some cases in which the factual basis for a particular sentence will come as a surprise to a defendant or the Government. The more appropriate response to such a problem is not to extend the reach of Rule 32(h)'s notice requirement categorically, but rather for a district judge to consider granting a continuance when a party has a legitimate basis for claiming that the surprise was prejudicial.

*Irizarry*, 2008 WL 2369164, at \*5; *see Burns v. United States*, 501 U.S. 129, 134 (1991) (Rule 32 "provides for focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence").

**[12]** Here, it can hardly be disputed that the Bureau of Prisons' study amounted to relevant factual information and that the district court relied on it when sentencing Warr. One of the reasons the district court sentenced Warr to a term well beyond the guidelines range was to protect the public from such a young, dangerous, and serial offender. A shorter term would have, in the district court's view, permitted his release at an age when, statistically speaking, there was a significant possibility of recidivism. Because the district court relied on this study, it should have notified Warr of it before the sentencing hearing.[8] *See Nappi*, 243 F.3d at 764 (holding that "where, as here, counsel are faced with having to review and address the contents of an additional document on which the Court intends to rely at sentencing, a meaningful opportunity to comment requires the Court, in accordance with Rule 32(c)(1), to provide a copy of the document to counsel for the defendant . . . within a sufficient time prior to the sentencing hearing to afford them a meaningful opportunity to comment on it at sentencing and, depending on the document, prepare a response or contest it") (citations omitted).

Warr must also show that the district court's reliance on the study caused him significant prejudice. *Maldonado*, 215 F.3d at 1051. He argues that, if he had known about the study, he may have been able to challenge its conclusions by, for example, disputing its premises, taking issue with its statistical methodology, or coming forward with other studies.

---

[8]The government argues that reliance on the study was not improper because the district court could have taken judicial notice of it, perhaps as a learned treatise. This argument misses the mark. The issue is not whether the district court, if it had provided proper notice to Warr, could have relied on the study, but whether the district court erred by failing to provide Warr with any notice whatsoever before relying on the study.

**[13]** We reject Warr's argument and conclude that Warr was not prejudiced by the district court's reliance on the study. The district court relied on the study solely for the well-known, common sense proposition that younger offenders are more likely to recidivate. *See, e.g., United States v. Seljan*, 497 F.3d 1035, 1047 (9th Cir. 2007) (finding a sentence to be reasonable because, among other considerations, the district court acknowledged that the defendant's advanced age reduced the likelihood of recidivism); *United States v. Kriesel*, 508 F.3d 941, 950 (9th Cir. 2007) (noting that "recidivism rates vary with factors like the offender's age") (quoting *Banks v. United States*, 490 F.3d 1178, 1191 (10th Cir. 2007)).

**[14]** Even Dr. Scolatti acknowledged the general truth of this empirical evidence during his sentencing testimony when the district court asked him about the findings of the Bureau of Prisons' study. Based on our reading of the sentencing transcript, and in particular, the thoroughness with which the district court discussed all of the relevant § 3553(a) factors, we have no doubt that, even without the study, the district court would have imposed the same sentence. Thus, although the district court should not have cited the study without first notifying the parties, its failure to do so does not amount to plain error that would require reversal of Warr's sentence.

IV

The district court did not err in its calculation of the advisory sentencing guidelines range, nor did the district court impose an unreasonable sentence. Although the district court should not have relied on the Bureau of Prisons' study at sentencing without notifying Warr in advance, the failure to provide advance notice was not plain error.

AFFIRMED.