# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44299

STATE OF IDAHO,

        Plaintiff-Respondent,

v.

KODY RAY GIBBS,

        Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Boise, August 2017 Term

2017 Opinion No. 111

Filed: November 6, 2017

Karel A. Lehrman, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County.  Hon. John T. Mitchell, District Judge.

The judgment of the district court is affirmed.

Eric D. Fredericksen, Idaho State Appellate Public Defender, Boise, for appellant. Reed P. Anderson argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Theodore S. Tollefson argued.

_____

HORTON, Justice.

Kody Ray Gibbs ("Gibbs") appeals the Kootenai County district court's order extending his probation. Gibbs argues that: (1) he was denied his constitutional right to due process because his case was not heard by an impartial judge; and (2) the district court abused its discretion by increasing, sua sponte, his probation from a term of six years to life. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March of 2013, Gibbs was charged with delivery of a controlled substance after he sold methamphetamine to a minor. Pursuant to plea negotiations, Gibbs pled guilty to delivery of a controlled substance, and the district court dismissed allegations that the delivery was to a minor and that Gibbs was a persistent violator. On August 9, 2013, the district court imposed a suspended sentence of fifteen years, with ten years fixed, and placed Gibbs on probation for five

years. One condition of Gibbs' probation required him to successfully complete mental health court.

On July 2, 2014, Gibbs tested positive for using spice and was ordered to serve seven days of discretionary jail time. On August 6, 2014, Gibbs was again ordered to serve seven days of discretionary jail time after he admitted to using spice, frequenting a bar, and associating with people involved in criminal activity. After these violations, Gibbs remained on probation, but his mental health court progress reports began reflecting concerns, with one report noting that Gibbs "needs to take this program seriously."

On November 19, 2014, Gibbs' probation officer filed a report of probation violation alleging that Gibbs had engaged in sexual activity with a fourteen year-old girl. The State filed a motion to show cause why probation should not be revoked. Gibbs was subsequently terminated from mental health court.

On March 26, 2015, Gibbs and the State entered into a Rule 11 Plea Agreement, in which Gibbs agreed to plead guilty to a felony charge of injury to a child ("the 2014 Case"), and to be sentenced to a unified term of five years, with two and one-half years fixed, with the court retaining jurisdiction.

Gibbs admitted that he violated the terms of his probation in the current case, and the district court extended the term of probation by one year, ordered Gibbs to continue probation on the same terms originally imposed, and added the requirement that Gibbs successfully complete the retained jurisdiction in the 2014 Case. Gibbs satisfactorily completed the rider.

On February 23, 2016, Gibbs' probation officer filed another report alleging that Gibbs had violated his probation by: (1) committing the felony crime of sexual exploitation of a child; (2) using methamphetamine; (3) possessing three unauthorized smart phones; (4) knowingly associating with his methamphetamine supplier; and (5) making prohibited contact with a victim. The State filed a motion to show cause why probation should not be revoked.

On April 27, 2016, the parties informed the district court that Gibbs had been indicted by a federal grand jury for possessing child pornography. The State requested a continuance of the probation violation hearing, and the parties informed the district court that they intended to enter into a plea agreement whereby Gibbs would plead guilty to the federal charge and the State would move to dismiss the probation violation proceedings in the current case and the 2014 Case

2

as well as the new sexual exploitation charge. The district court expressed concern about the proposed agreement, stating:

> Well, if the State does withdraw the allegations, I intend to proceed on an order to show cause. I have the ability to enforce my orders, and if these allegations are proven to be true, my intention is to impose your Idaho prison sentence, so we can proceed at a later date but it would be on an evidentiary hearing even if the State wants to withdraw these allegations. . . .
> I think both sides need to research my ability to go forward. I mean I don't want to do something illegal, but my understanding is that the Court has the power to enforce its own orders, and if you're going to strip the Court of that power, I'm not — you'd better be sure you can do it.

On May 17, 2016, the parties filed a written plea agreement in which the State committed to dismissing the pending felony charge and the probation violation allegations in the 2014 Case and the current case if Gibbs pled guilty to the federal charge. On May 23, 2016, Gibbs' lawyer sent the district court a letter regarding the pending probation violation proceeding. The letter explained the federal charges against Gibbs, the sentence he would likely receive, and the possibility of supervised release following his incarceration.

In a May 25, 2016, hearing, the district court acknowledged that it had reviewed the letter from Gibbs' counsel as well as the proposed plea agreement. The district court clarified its position stating:

> All right. And I've read the plea agreement. On April 27th I indicated that if the plaintiff were to withdraw the allegation or not prosecute on the probation violation or the order to show cause, that I was planning on proceeding ahead with an order to show cause of my own, and I think the appropriate way to proceed beyond that would be to appoint a special prosecutor, so why . . . I would not want to enforce my order and impose Mr. Gibbs' prison sentence in the state of Idaho if he didn't do — if he did what he was accused of doing.

The prosecuting attorney responded that "it was my decision [after consultation with his superiors] to use my discretion, my prosecutorial discretion, to dismiss the case essentially without prejudice to see what the feds were going to do." The prosecuting attorney went on to say that "this doesn't happen a lot to [sic] where I'll dismiss a case if it goes federal, but it's happened a handful of times in my practice where I've done just that." The State indicated it had filed motions to dismiss in Gibbs' other state court cases and noted that Gibbs would be serving significant time on the federal charge and, upon release, would be required to register as a sex offender.

3

The district court granted the State's motion to dismiss the motion to show cause, but it also made its own order to show cause, informing the parties, "I'm going to appoint a special prosecutor and we'll have an evidentiary hearing, and I'm just — I'm not going to let the judiciary's ability to enforce its own orders be tramped . . . ."

On June 6, 2016, the district court informed the parties that while it previously intended to appoint a special prosecutor, it found the "simpler solution" to be increasing the length of Gibbs' probation. The district court stated:

> I'm not increasing the sentence. I don't have the ability to do that. I would be increasing the length of probation . . . . I'm happy to reconsider this if there is legal argument to the – that should cause me to reconsider, but I will get an order out today increasing the length of probation, same terms and conditions, to life, and then when Mr. Gibbs gets out, if I'm still a judge, then I can decide whether or not to proceed with a probation violation, and if I don't, then you're still on probation which I think would be a benefit to the public that you be on probation in addition to any parole that you might be on with the federal system . . . .

The district court entered an order placing Gibbs on supervised probation for life on the same terms and conditions that were imposed on August 9, 2013, and as modified on November 20, 2014. The district court explicitly reserved the right to bring an order to show cause and hearing on the February 23, 2016, Report of Violation, following Gibbs' completion of his federal prison sentence. Gibbs timely appealed. His appeal asserts that he was denied his due process right to an impartial judge and that the district court abused its discretion when it extended his probation.

## II. STANDARD OF REVIEW

Gibbs did not advance his constitutional claim before the district court. Therefore, we apply the fundamental error test articulated in *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010). This three-part test requires:

> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Id.* at 226, 245 P.3d at 978.

A district court's decision to extend probation is reviewed for abuse of discretion. *State v. Breedon*, 129 Idaho 813, 815, 932 P.2d 936, 938 (1997). To determine whether a trial court

4

abused its discretion, this Court considers "(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989) (internal citation omitted).

### III.  ANALYSIS

As noted earlier, Gibbs' appeal presents two claims: that he was denied his constitutional right to due process because his case was not heard by an impartial judge, and that the district court abused its discretion when it extended Gibbs' probation from six years to life after the State dismissed the probation violation allegations. We will address these claims in turn.

**A.  Gibbs has failed to establish that the district court judge who presided over his case was not impartial.**

Gibbs contends that he was denied his constitutional right to due process because his case was not heard by an impartial judge. Gibbs argues that the district court judge was upset that the parties entered into a plea agreement which, in his view, "tramped" his ability to enforce his orders. Specifically, Gibbs argues that his right to due process was violated when the district court judge rejected the plea deal offered by the parties and increased Gibbs' probation on his own accord, thereby stepping into the role of the prosecutor. Gibbs reasons that if this case had been heard by an impartial judge, his probation would not have been extended because the State had moved to dismiss the charges and had not suggested that any additional punishment would be proper. Further, Gibbs contends that "[t]he judge's continued involvement in this case – culminating in his order extending Mr. Gibbs' probation to a term of life and indicating his intent to potentially pursue the probation violation allegations against Mr. Gibbs after Mr. Gibbs completes his federal prison sentence – violated Mr. Gibbs' right to procedural due process."

We start with the observation that we are not presented with a situation where the district court actually appointed a special prosecutor to advance probation violation allegations where the county prosecutor has refused to do so and then presided over a probation violation hearing. We do not reach this question because the issue is not ripe and we do not address constitutional questions such as separation of powers that we are not required to address. *See State v. Doe*, 140 Idaho 271, 273, 92 P.3d 521, 523 (2004) ("[W]hen a case can be decided upon a ground other than a constitutional ground, the Court will not address the constitutional issue unless it is necessary for a determination of the case.").

5

The Fourteenth Amendment to the United States Constitution prohibits the State from depriving any person of life, liberty, or property, without due process of law. U.S. Const. amend XIV, section 1. Due process demands the parties be heard by an impartial trial judge. *State v. Lankford*, 116 Idaho 860, 875, 781 P.2d 197, 212 (1989) (internal citation omitted). Accordingly, a judge who engages in "prosecutorial acts" may violate a defendant's constitutional rights. *Id.*

However, the narrow question presented by this appeal is whether the district court's action in extending Gibbs' probation must be reversed due to a lack of impartiality. In order to disqualify a judge for prejudice, it must be shown that the prejudice is directed against the party and is "of such nature and character as would render it improbable that the party could have a fair and impartial trial in the particular case pending." *Id.* (internal citations omitted). Even if a trial judge has been exposed to prejudicial information, judges are presumed "capable of disregarding that which should be disregarded." *Pizzuto v. State*, 134 Idaho 793, 799, 10 P.3d 742, 748 (2000) (citing *Sivak v. State*, 112 Idaho 197, 205, 731 P.2d 192, 200 (1986)). "[T]he standard for recusal of a judge, based simply on information he has learned in the course of judicial proceedings, is extremely high." *Bach v. Bagley*, 148 Idaho 784, 792, 229 P.3d 1146, 1154 (2010).

In determining whether judicial bias is present such that a recusal may be warranted, this Court has held:

> First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion . . . and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . . Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge . . . .

*State v. Dunlap*, 155 Idaho 345, 391, 313 P.3d 1, 47 (2013) (citing *Liteky v. United States,* 510 U.S. 540, 555–56 (1994)).

Once a person is convicted of a crime or has entered a guilty plea, "the court in its discretion may . . . suspend the execution of judgment . . . and may place the defendant on probation under such terms and conditions as it deems necessary and appropriate." I.C. § 19-2601(2). After a defendant is placed on probation, Idaho Code section 20-222 "empowers the

6

court to extend the probation period, so long as the total term does not exceed the maximum period for which the defendant might have been imprisoned." *State v. Breeden*, 129 Idaho 813, 815, 932 P.2d 936, 938 (1997) (internal citations omitted).

In *State v. Lankford*, this Court reviewed numerous actions taken by a district court to determine whether there was evidence of bias or a prejudicial attitude by the judge. 116 Idaho at 875, 781 P.2d at 212. Specifically, this Court reviewed the district court's *sua sponte* consideration of two additional aggravating factors during sentencing and found that the district court's action was "not evidence of a prejudicial attitude but rather constitutes the trial court's proper performance of its statutory duties." *Id.* (finding that the judge is required to determine sentencing and the prosecuting attorney merely provides sentencing recommendations). In the present case, it appears that the district court believed it was acting within the statutory framework to monitor and extend Gibbs' probation period pursuant to Idaho Code section 20-222. We do not find that the district court's action in response to information presented to it in the course of its handling of Gibbs' case constitutes a "prosecutorial act" because action to extend probation may only be done by the court. Although this is a close case, we conclude that Gibbs has failed to meet the "extremely high" burden imposed on those asserting judicial bias based upon information acquired in the course of judicial duties. This case does, however, raise a significant question as to whether the district court's decision constituted an abuse of discretion.

**B.** **The district court did not abuse its discretion when it modified Gibbs' probation from a term of six years to a term of life.**

Gibbs argues that the district court abused its discretion when it lengthened, *sua sponte*, his probation after the probation violation allegations were dismissed. In this case, it is evident that the district court recognized that it had the discretion to extend the term of Gibb's probation. As Gibbs' underlying conviction was for delivery of a controlled substance, a crime which carries a maximum penalty of life imprisonment, the district court's decision was within the outer boundaries of its discretion. The district court's decision was based upon reason, as it reflected the district court's view that it was appropriate for the protection of society. The remaining question is whether the decision was consistent with the applicable legal standards governing decisions to modify the duration of probation. This last question is one which we have not previously explored.

There are two statutes addressing the trial courts' authority to modify probation. Idaho Code section 20-221(1) provides that "the court may impose and may at any time modify any

7

terms or conditions of probation or suspension of sentence." Idaho Code section 20-222(1) states that "[t]he period of probation or suspension of sentence shall be fixed by the court and may at any time be extended or terminated by the court. Such period with any extension thereof shall not exceed the maximum period for which the defendant might have been imprisoned."

Both statutes authorize the courts to act "at any time" and neither statute provides explicit conditions under which the courts may exercise this authority. In view of the similar language employed by these two statutes (not to mention that they are codified adjacent to one another), we believe that the same legal standards ought to govern decisions made under both statutes.

Idaho Code section 20-221(2) authorizes "[a]ny party or the board of correction" to request a modification of the terms and conditions of probation. The request need only "[set] forth the facts upon which the request is based." Indeed, Idaho Code section 20-221(2) authorizes courts to rule upon such requests "without a hearing." Likewise, Idaho Code section 20-221(3) authorizes courts to exercise the power granted by Idaho Code section 20-222(1) to terminate probation "without a hearing."

In the absence of any prior decision from this Court addressing this important question, we start with a few observations. First, the statutes permit the trial court to alter conditions and the duration of probation. There are times when the trial court may wish to reduce the burdens of probation for a defendant. For example, a court may wish to reward a defendant for good performance while on probation, either by reducing the length of probation or removing burdensome conditions, e.g., travel restrictions. We can discern no principled basis for imposing different legal standards for increasing the burden on a probationer from those instances where the burden is reduced. Second, there are occasions when the trial court may become aware that the defendant has rehabilitative needs that may be addressed through probation which were not apparent at the time of sentencing. Frequently, a defendant's substance abuse or mental health issues only become apparent after supervision has begun. There is no discernable purpose for requiring adversarial proceedings (i.e., probation violation proceedings) as a prerequisite to addressing a defendant's immediate needs through probation. Finally, given the limited supervision resources available to the Department of Correction, it makes no sense whatsoever to restrict the ability of trial courts to terminate probation for low-risk offenders to those instances where a probation violation has been proved.

Thus, we hold that the applicable legal standard governing probation modification proceedings is this: If, in the regular course of his or her duties, a judge becomes aware of circumstances constituting good cause for modification of the conditions or duration of probation (whether that be adding or eliminating conditions of probation or extending, reducing or terminating the duration of probation), after notice to the parties and affording the parties an opportunity to be heard, the trial court may modify the terms or duration of probation pursuant to Idaho Code section 20-221(1) or 20-222(2).

We note that Gibbs' briefing on appeal[1] does not address the trial court's authority to extend the length of his probation under Idaho Code section 20-222(1). Although the failure to acknowledge the legal basis for the trial court's action would ordinarily have been fatal to his claim that the trial court erred, we will consider his claim of error under the standard that we have just articulated.

Here, the district court was provided substantial information in the course of its duties that were germane to its evaluation of the risk that Gibbs presented to society. The district court knew that Gibbs was on probation for delivery of methamphetamine to a minor. The district court knew that Gibbs violated that probation by having sexual contact with a minor, resulting in the 2014 Case. Based upon representations to the district court from both parties, the district court knew that Gibbs had been charged in federal court with a felony offense of child pornography, that he intended to plead guilty to the charge, and that Gibbs would receive a substantial federal prison sentence. In short, the district court was aware of significant facts which persuaded it that Gibbs' continuing criminal conduct necessitated extending probation for the protection of society.

As is frequently the case in sentencing review cases, if we were acting in the role of the trial court, we might well have reached a different conclusion as to whether probation for life was necessary in Gibbs' case. However, as "our task is not to determine whether we agree with"

---

[1] In the proceedings before the trial court, Gibbs' attorney acknowledged the court's statutory authority to extend probation, but objected on the grounds that Gibbs "was sentenced to a particular term, and this would be an increase of that." This Court has rejected this argument. In *Muchow v. State*, 142 Idaho 401, 128 P.3d 938 (2006), the district court extended the defendant's probation by an additional year pursuant to Idaho Code section 20-222. *Id*. at 402, 128 P.3d at 939. The defendant violated his probation during the extended period of probation, and the district court revoked probation and imposed the previously suspended sentence. *Id*. On appeal, the defendant contended that the district court could not revoke probation after the original probationary period would have expired. We made short work of this argument: "Idaho Code § 20-222 is clear on its face. The term 'maximum period for which the defendant might have been imprisoned' simply means the total number of days *a* defendant may be placed in physical custody for a particular crime." *Id*. at 403, 128 P.3d at 940.

the district court's decision, *State v. Windom*, 150 Idaho 873, 881, 253 P.3d 310, 318 (2010), we may not reverse the district court's decision in the absence of an abuse of discretion. As the district court recognized its discretion, acted within the boundaries of that discretion and consistent with applicable legal standards, and reached its decision through the exercise of reason, we are duty-bound to affirm.

## IV. CONCLUSION

We affirm the district court's order extending the term of Gibbs' probation.


Chief Justice BURDICK, and Justices EISMANN and BRODY **CONCUR.**


JONES, J. concurring in part and dissenting in part:

I reluctantly concur with Section A of the majority opinion, but only because the standard of review is whether the district court abused its discretion. Extending my deference of the district court's discretion to its absolute maximum, I agree that the district court did not exhibit bias against Gibbs. Turning, however, to Section B of the majority opinion, I simply cannot agree that the district court did not abuse its discretion when it modified Gibbs' probation term. I firmly believe that the district court judge fell far short of the permissible discretion when he extended Gibbs' probation from a term of six years to a term of life. Specifically, I believe that the district court's conclusion was not reached through an exercise of reason.

The majority thinks that this is a close case with respect to the issue of bias, but also recognizes that this case raises a significant question as to whether the district court's decision constitutes an abuse of discretion. The majority admits that it "might well have reached a different conclusion as to whether probation for life was necessary in Gibbs' case." However, the majority then acknowledges that it is not our task to determine whether we agree with the district court's decision, but instead it is our task to decide whether the district court abused its discretion. Although I agree with the majority's statements, I simply cannot agree that there was no abuse of discretion here.

Looking at the facts of this case, it is apparent that the district court was dissatisfied with the parties' plea agreement in which the prosecutor proposed dismissing the state court proceedings in exchange for Gibbs' guilty plea to federal charges regarding possession of child pornography, which would likely result in a substantial federal sentence. Upon receiving notice

10

of the parties' intent to dismiss the allegations that Gibbs violated his probation, the judge acknowledged various steps that could be taken before he would proceed with modifying probation, *e.g.*, appointing a special prosecutor and holding an evidentiary hearing. However, upon realizing that these alternative options "seemed to be a lot of work," the judge placed Gibbs on probation indefinitely and justified his decision by stating that it was in the best interest of society. For a decision to be reached through an exercise of reason, especially a decision extending probation, I believe that a probationer must be given the opportunity to dispute allegations upon which a probation extension is based.

Despite the prosecution's decision to dismiss the motion to show cause, the judge assumed that the probation violation allegations originally levied against Gibbs were true, and he based his decision to extend Gibbs' probation on these unproven allegations. The judge began by stating that he had "the ability to enforce [his] own orders, and *if these allegations are proven true*, my intention is to impose [Gibbs'] Idaho prison sentence." (Emphasis added). At the next hearing, the judge changed course and determined that it would be appropriate to appoint a special prosecutor and hold an evidentiary hearing. Had an evidentiary hearing been held, I would have no problem with the result because Gibbs would have had an opportunity to be heard and defend himself before the modification of his probation. However, thereafter, the judge changed course again, stating that he had reached a "simpler solution" and would:

> [G]et an order out today increasing the length of probation, same terms and conditions, to life, and then when Mr. Gibbs gets out [from his federal prison sentence], if I'm still a judge, then I can decide whether or not to proceed with a probation violation, and if I don't, then [Gibbs is] still on probation which I think would be a benefit to the public that [Gibbs] be on probation in addition to any parole [Gibbs] might be on with the federal system . . . .

In response to defense counsel's inquiry as to whether the district court would still be appointing a special prosecutor, the judge replied no, "that seemed to be a lot of work and - - and I think this is a better result for the public. I think I can protect the public better this way than what I was proposing doing earlier." While the result may be a "simpler solution," it offends principles of due process.

As noted by the majority, there is no doubt that a court has the power to modify the terms or duration of probation for good cause after notifying the parties and affording the parties an opportunity to be heard. I.C. § 20-221; I.C. § 20-222(2). However, a review of the transcript in

11

the present case shows no discussion, analysis, or argument on the modification of the terms of probation. Moreover, the judge did not offer the parties a reasonable opportunity to be heard, *i.e.*, to offer information in mitigation. The parties arrived at the hearing believing that they would be discussing the appointment of a special prosecutor. Instead, the judge essentially ambushed the parties with a *sua sponte* decision to extend Gibbs' probation. I firmly believe that the judge was not happy with the proposed plea agreement and decided that—instead of appointing a special prosecutor—the "simpler solution" was to punish the defendant by increasing the probation from a term of six years to life, and to leave him with the threat that the judge might revive the probation violation at a later time.

It is firmly established that, in reviewing whether a lower court has abused its discretion, this Court must determine "(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989) (internal citation omitted).

In the present case, there is no question that the district court rightly perceived the issue as one of discretion, and acted within the outer bounds of such discretion—although, the district court certainly toed the line of the outer bounds of its discretion by imposing a lifetime of probation. However, as I indicated earlier, there was no "reason" involved in any of this proceeding. There was absolutely no reason exercised in any of the interplay between the defendant, the prosecutor, and the district court. In short, the plea agreement proposed by the parties upset the judge, and the proceeding degenerated into an argument in which the judge sought to determine what he could do within his discretion to upset the prosecutor's plan to dismiss the probation violation allegations. Ultimately, the judge succumbed to a knee-jerk reaction, extending Gibbs' probation to a term of life and putting the probation violation issue on hold until the federal process is complete.

As an example of judicial discretion, the context of this proceeding would leave a damaging image in an observer's mind, of a judge who handed out an arbitrary sentence based on no reasoning whatsoever. The transcript of these proceedings will certainly not paint a favorable impression of judicial conduct to the average citizen. Instead, the picture it portrays is that of a defendant caught up in a dispute between a prosecutor and a judge that ends with a

12

lifetime of probation. This order was entered by a judge that, although probably not biased, was at least angry enough to impose a life term of probation.

Instead of acting reasonably, the district judge repeatedly showed his disdain for the parties' plea agreement, and when the parties disagreed with him, he independently elected to proceed with an order that will affect Gibbs for the rest of his life. The bottom line is that the judge's decision to extend Gibbs' probation to a term of life was rooted in his anger rather than through an exercise of reason.