**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47770**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 15, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| RUFINO ANGELO RAMIREZ, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Scott L. Wayman, District Judge.

Order denying motion to modify terms of probation, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Rufino Angelo Ramirez appeals from the district court's order denying his motion to modify the terms of his probation. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Ramirez was charged with lewd conduct with a minor under sixteen for allegedly touching his granddaughter's genitals over her clothing while in a vehicle delivering newspapers. The granddaughter disclosed this incident during an interview with officers investigating allegations that Ramirez had similarly abused her during a later trip to Arizona. Ramirez denied abusing his granddaughter while delivering newspapers and claimed that he was asleep and dreaming during

the Arizona incident.  Pursuant to a plea agreement, Ramirez entered an *Alford*[1] plea to an amended charge of injury to child.  In exchange for Ramirez's plea, the State agreed to recommend probation if a psychosexual evaluation and polygraph examination indicated he posed a low recidivism risk.  The testing indicated Ramirez presented a below-average risk of sexual recidivism, but the psychosexual evaluator cautioned that Ramirez was not forthcoming and candid during the evaluation process.

The district court sentenced Ramirez to a suspended prison term and placed him on probation for two years.  The district court ordered Ramirez to be supervised as a sex offender and to "comply with all special sex[-]offender terms of probation requested by his probation officer."  Weeks later, Ramirez moved to modify the terms of his probation.  The motion sought, among other things, to eliminate a probation condition that prohibited him from "using the internet" or having an internet-enabled phone.  The district court denied Ramirez's request to remove the internet prohibition, concluding that it was "reasonable and appropriate" considering the nature of his crime and sex-offender supervision.  Ramirez appeals.

## II.

## STANDARD OF REVIEW

We review a trial court's decision on a motion to modify the terms and conditions of probation for an abuse of discretion.  *See State v. Gibbs*, 162 Idaho 782, 789, 405 P.3d 567, 574 (2017) (holding that a trial court's decision to extend a probation term is reviewed for an abuse of discretion).  When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court:  (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason.  *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

---

[1]  *See North Carolina v. Alford*, 400 U.S. 25 (1970).

2

Ramirez argues that the district court erred by denying his request to modify the term of his probation imposing a blanket prohibition against internet access. Ramirez contends the condition violates the First Amendment and has no reasonable relation to the goals of probation. The State responds that the record shows the probation condition is reasonably related to Ramirez's rehabilitation and is, therefore, lawful. We hold that Ramirez has failed to show that the district court abused its discretion by denying his motion to modify the terms of his probation.

## A. First Amendment

Ramirez first argues that the probation condition prohibiting him from accessing the internet violates the First Amendment under *Packingham v. North Carolina*, ___ U.S. ___, 137 S. Ct. 1730 (2017). In *Packingham*, the United States Supreme Court held that a North Carolina statute which prohibited registered sex offenders from accessing certain social networking websites violated the First Amendment. The Court held that the North Carolina statute was unconstitutionally overbroad because "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights." *Id.* at ___, ___ U.S. at ___, 137 S. Ct. at 1737. In holding as much, the Court reasoned that the internet, and "social media in particular," are "the most important places . . . for the exchange of views." *Id.* at ___, ___ U.S. at ___, 137 S. Ct. at 1735.

*Packingham* does not resolve Ramirez's First Amendment claim for two reasons. First, *Packingham* focused on the validity of a criminal statute applicable to *all* registered sex offenders, including those who had completed their sentences and were not serving some form of supervised release. Thus, the Court was considering the constitutionality of a statute, not the constitutionality of a probationary term. As such, one of the majority's central concerns in *Packingham*--that "persons who have completed their sentence" fell within the ambit of the North Carolina statute--does not apply to a probationer. *Id.* (stating that it "is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentence"). Consequently, *Packingham* does not apply to Ramirez's constitutional challenge to his probation condition.[2]

---

[2] Existing United States Supreme Court precedent suggests that review of probation conditions that burden constitutional rights is not more searching than review aimed at determining whether the condition reasonably relates to the goals of probation. *See Turner v. Safley*, 482 U.S.

Second, even if *Packingham* recognizes a right to access the internet under the First Amendment, that does not mean a probation condition restricting that right is unconstitutional. Indeed, the Court in *Packingham* "assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor," recognizing that "specific laws of that type must be the State's first resort to ward off the serious harm that sexual crimes inflict." *Id.* at ___, ___ U.S. at ___, 137 S. Ct. at 1737. If a statute could be narrowly tailored in this way and still comport with the First Amendment, so too can a probation condition. Moreover, it is well-settled that restrictions that would infringe the constitutional rights of ordinary citizens are not *per se* impermissible in the probation context. *See* 21A AM. JUR. 2d *Criminal Law* § 822 (2020). For example, the Idaho Supreme Court has held that probation conditions requiring submission to warrantless searches do not constitute an unreasonable invasion of a probationer's Fourth Amendment rights. *See State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987). Thus, the critical question in this case is not whether a probation condition limiting Ramirez's internet access burdens his First Amendment rights but, rather, whether the condition to which he is subject reasonably relates to the goals of his probation. We address this question below.

## B.    Goals of Probation

Ramirez argues that the denial of his motion to modify his probation is an abuse of discretion because the condition limiting his internet access lacks a reasonable relationship to the goals of his probation. Consequently, Ramirez contends the district court failed to act consistently with applicable legal standards in denying his motion to modify probation terms. As previously noted, the State responds that the record shows the probation condition is reasonably related to Ramirez's rehabilitation.

---

78, 89 (1987) (rejecting prisoners' argument that prison regulation that burdened the prisoners' fundamental rights should be subject to strict scrutiny, asking instead whether the regulation that burdened the prisoners' fundamental rights was "reasonably related" to "legitimate penological interests"); *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (holding that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system").

Trial courts have broad discretion to create necessary and appropriate probation conditions. I.C. § 19-2601(2); *State v. Mummert*, 98 Idaho 452, 454, 566 P.2d 1110, 1112 (1977). These terms and conditions may include restrictions on important liberties, such as the right to travel, to change jobs or residences, or even to marry. *State v. Cheatham*, 159 Idaho 856, 858, 367 P.3d 251, 253 (Ct. App. 2016). A trial court's discretion in this context, however, is not boundless. A valid condition of probation must be reasonably related to the rehabilitative and public safety goals of probation. *Id.* Whether the terms and conditions of a defendant's probation reasonably relate to the goals of probation and whether constitutional requirements have been satisfied are legal questions. *Id.*

As a condition of his probation, Ramirez agreed to "comply with all special sex[-]offender terms of probation requested by his probation officer." During the hearing on Ramirez's motion to modify the terms of his probation, Ramirez testified that sometime after sentencing he learned that, as a condition of his supervision as a sex offender, he was "not allowed to use the internet" or have "a phone that can get the internet." Ramirez further testified that he wanted internet access to find the location of homes while delivering newspapers. Ramirez challenged the condition as lacking a reasonable relationship to the goals of his probation because the State had not alleged facts showing that the crime he was on probation for had a connection to internet use. The district court rejected this argument, concluding that prohibiting Ramirez from accessing the internet was "reasonable and appropriate in light of the nature of the charge" and his supervision as a sex offender. Ramirez faults the district court for upholding the condition without considering the particular facts of his case.

Initially, we note that Ramirez did not present evidence below establishing the actual language of the probation condition he challenges. Instead, the only evidence presented relating to the content of the condition was Ramirez's testimony that he was not "able to use the internet or have a phone . . . that can get the internet." Although Ramirez's testimony illuminates certain conduct the condition prohibits, it provides little insight into the actual language of his probation condition. The conduct a condition affects is not the sole criterion for evaluating the condition's reasonableness. The precise scope of a condition, including any applicable exceptions, are important factors to consider. Subtle variations in the actual language of a condition can significantly affect its scope. For example, a condition prohibiting a defendant from "having

5

access" to the internet is broader than one prohibiting "use" of the internet. Consequently, the absence of the actual language of Ramirez's probation condition renders meaningful appellate review difficult. However, the district court apparently interpreted the probation condition at issue to be a blanket prohibition against Ramirez accessing the internet that his probation officer had discretion to modify. We will, therefore, review the condition as such.

According to Ramirez, there is no connection between the internet and the criminal offense charged in this case, rendering the probation condition prohibiting him from accessing the internet "patently unreasonable." Ramirez's argument is unpersuasive. Although the criminal conduct charged in this case lacked a direct relationship with the internet, other evidence in the record of Ramirez's history and characteristics support restricting his internet access. First, Ramirez's presentence investigation report (which the district court reviewed extensively prior to sentencing) contained allegations of recent sexual abuse that Ramirez perpetrated against his granddaughter while watching a movie on his phone. This Court has previously upheld a probation condition limiting computer access where, as here, the defendant used such technology while engaging in sexually deviant conduct with minors. *See State v. Wardle*, 137 Idaho 808, 810, 53 P.3d 1227, 1229 (Ct. App. 2002). Even though Ramirez had not been charged criminally for this alleged conduct, the district court could consider it when fashioning Ramirez's probation conditions. *See State v. Moore*, 131 Idaho 814, 824, 965 P.2d 174, 184 (1998) (observing that a defendant's sentence was reasonable based, in part, on his history of uncharged sexual abuse of minors).

In addition to allegations of Ramirez using the internet while sexually abusing his granddaughter, there is more direct evidence that limiting Ramirez's internet access will further his rehabilitation. As previously stated, the goal of probation is to foster the defendant's rehabilitation while protecting society. *Wardle*, 137 Idaho at 810, 53 P.3d at 1229. Restricting a sex-offender's computer or internet access can aid rehabilitation--even if the offender is not *convicted* of crimes involving the internet. *See State v. Heffern*, 130 Idaho 946, 949, 950 P.2d 1285, 1288 (Ct. App. 1997) (observing that, with due caution, a trial court may consider a defendant's alleged criminal activity for which no charges have been filed at sentencing). Ramirez admits viewing pornographic material on the internet, and his psychosexual evaluation expressly recommended that he "refrain from sexually explicit environments [and] viewing pornography"

6

while on probation. Based on the foregoing, we cannot say that restricting Ramirez's internet use lacks any reasonable relationship to the goals of his probation.

Ramirez relies on cases from other jurisdictions concluding that, in certain circumstances, banning a defendant from accessing the internet during a period of supervised release is impermissible. However, these cases are materially different for one of two reasons. First, some of the cases involve either indeterminate or lengthier restrictions than the two-year prohibition at issue here. *See United States v. Eaglin*, 913 F.3d 88, 97 (2d Cir. 2019) (eleven-year prohibition); *United States v. Perazza-Mercado*, 553 F.3d 65, 66 (1st Cir. 2009) (fifteen-year restriction); *United States v. Holm*, 326 F.3d 872, 874 (7th Cir. 2003) (length of supervised release not specified). Second, other cases that Ramirez cites do not involve allegations of sexually deviant conduct with minors occurring concurrently with internet use. *See United States v. LaCoste*, 821 F.3d 1187, 1189 (9th Cir. 2016); *United States v. Wiedower*, 634 F.3d 490, 492 (8th Cir. 2011); *United States v. Freeman*, 316 F.3d 386, 389 (3d Cir. 2003).

Also, we note that some cases have upheld supervision conditions that restrict a defendant's internet access. *See, e.g.*, *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010) (affirming a complete, one-year internet prohibition after the defendant violated lesser supervision restrictions); *United States v. Johnson*, 446 F.3d 272, 274, 283 (2d Cir. 2006) (upholding an unconditional three-year internet ban for a sex offender); *United States v. Paul*, 274 F.3d 155, 160, 170 (5th Cir. 2001) (upholding an unconditional three-year term of supervised release prohibiting the defendant from using "computers, the Internet . . . or any item capable of producing a visual image" where the defendant was convicted of possessing child pornography). The two-year probation restriction on Ramirez's internet access is of similar duration and apparent scope as the restrictions upheld in other jurisdictions.

Ramirez further contends that the district court erred by failing to consider "less restrictive alternatives," resulting in the imposition of an impermissibly overbroad, internet-access prohibition. According to Ramirez, a narrow condition restricting his internet use for certain purposes and enforced by monitoring software and unannounced inspections is sufficient. This argument fails. First, the district court addressed the concerns Ramirez actually raised below relating to the restrictions on his internet use. More specifically, Ramirez asserted that internet access would aid him in navigating his newspaper delivery route. In response, the district court

observed that Ramirez could use other means, like GPS devices, to assist him while delivering newspapers. Ramirez articulated no other manner in which his restricted internet access negatively affected him. Second, the allegations regarding Ramirez's use of technology while abusing his granddaughter in Arizona, the duration of his probation, and his lack of candor and attempts to minimize his own responsibility during his psychosexual evaluation support a broad internet restriction. Ramirez has failed to show that he is subject to an overbroad probation condition.

Because it was within the district court's discretion to conclude, based on the information available to it, that a condition prohibiting Ramirez from accessing the internet was reasonably related to the goals of his probation, Ramirez has failed to show that the district court abused its discretion by denying his motion to modify the terms of his probation.

## IV.
## CONCLUSION

Ramirez has failed to show the district court abused its discretion by declining to modify the term of his probation prohibiting him from accessing the internet. Accordingly, the order denying Ramirez's motion to modify the terms of his probation is affirmed.

Chief Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.